503 F.2d 339
 UNITED STATES of America ex rel. William MATTHEWS
v.
Robert L. JOHNSON, Superintendent, District Attorney of
Philadelphia. Appealof COMMONWEALTH OF PENNSYLVANIA.
 No. 73-1424.
 United States Court of Appeals, Third Circuit.
 Argued Jan. 15, 1974, Submitted En Banc Under Third Circuit
Rule 12(6) May 15,1974.
Decided Aug. 15, 1974.
 
 Judith Dean, Asst. Dist. Atty., Philadelphia, Pa. Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Div., Richard A. Sprague, First Asst. Dist. Atty., Philadelphia, Pa., for appellant.
 Abraham J. Brem Levy, Philadelphia, Pa., for appellee.
 Before SEITZ, Chief Judge, and KALODNER and ALDISERT, Circuit Judges.
 Before SEITZ, Chief Judge, and KALODNER, VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This court is required to resolve a knotty Fourteenth Amendment problem in Pennsylvania murder trials which has evenly divided the justices on that state's highest court.[1] We are to decide whether, in a prosecution on a murder indictment, the Fourteenth Amendment requires the trial court, upon request, to give the jury the option of returning a verdict of voluntary manslaughter.[2] Adopting a Magistrate's Report and Recommendation, the district court reasoned that because Pennsylvania case law permits a jury verdict of voluntary manslaughter in the absence of evidence supporting the elements of that offense,[3] and also permits the trial court to exercise its discretion in deciding whether to give instructions on voluntary manslaughter,[4] a failure to submit the issue to the jury violated the defendant's constitutional rights of Due Process and Equal Protection. Accordingly, it granted a writ of habeas corpus. The Commonwealth appealed. Without reaching the Equal Protection issue, we affirm.
 
 
 2
 The relevant facts were summarized briefly in Commonwealth v. Matthews, 446 Pa. 65, 285 A.2d 510, 511 (1971):
 
 
 3
 From the evidence, the jury was warranted in finding that Matthews, on February 23, 1968, acting in concert with his nephew, James Williams, and a friend, James Jackson, robbed Randolph Butts in Philadelphia and during the perpetration of the robbery Butts was stabbed four times by one of the felons, causing injury which resulted in Butts' death.
 
 I.
 
 4
 We begin our analysis with the Pennsylvania substantive law of voluntary manslaughter. For federal purposes we accept Justice Pomeroy's statement of the appropriate state law:
 
 
 5
 While it is considered felonious, voluntary manslaughter is the least culpable form of homicide included with a murder indictment. Thus, when considering the degree of culpability of an individual being tried under such an indictment, a jury may return a voluntary manslaughter verdict if it finds that the killing, althouth intentional, was committed without malice; that is, the accused may be shown to have been acting under the influence of sudden passion which was caused by legally adequate provocation that placed him beyond the control of reason.[5] See e.g., Commonwealth v. Walters, 431 Pa. 74, 244 A.2d 757 (1968); Commonwealth v. Paese, 220 Pa. 371, 69 A. 891 (1908). These elements need not always be present, however, to support a voluntary manslaughter verdict. Pennsylvania courts have long accepted the common law rule that the jury has the power to find a defendant guilty of voluntary manslaughter even in the absence of passion or provocation, where the evidence is sufficient to support a first or second degree murder verdict. Commonwealth v. Hoffman, 439 Pa. 348, 266 A.2d 726 (1970); Commonwealth v. Kellyon, 278 Pa. 59, 122 A. 166 (1923); Commonwealth v. Gable, 7 Serg. & R. 423 (1821). Although superficially such a rule may seem incongruous, it does have a rational basis. In essence, the rationale of the rule is founded on two considerations: (1) the legal concept that voluntary manslaughter is by definition a lesser offense than murder but one included within a murder indictment, (2) a realistic appreciation of the fact that factors such as sympathy or extenuating circumstances may lead a jury to find a defendant guilty of the lesser included offense of voluntary manslaughter even though the evidence is enough to establish guilt of murder in the second or even the first degree. Commonwealth v. Hoffman, supra.
 
 
 6
 Imposed upon this conceptual framework is a second rule . . .. That rule gives a trial judge complete discretion in deciding whether or not to submit voluntary manslaughter to the jury as a possible verdict in a case where there is no evidence of passion or provocation.[6] See, e.g., Commonwealth v. LaRue, 381 Pa. 113, 112 A.2d 362 (1955); Commonwealth v. Yeager, 329 Pa. 81, 196 A. 827 (1938). The reason for this rule is said to be that a charge on a point or issue which is unsupported by any evidence '. . . is likely to confuse the jury and obstruct Justice.' Commonwealth v. Pavillard, 421 Pa. 571, 221 A.2d 807 (1966).
 
 
 7
 Commonwealth v. Matthews, supra, 285 A.2d at 517.
 
 II.
 
 8
 The genesis of the federal constitutional problem is the anomaly that although the jury has unfettered power to return a voluntary manslaughter verdict as a lesser included offense of a murder indictment, it could not do so if the trial judge refused to charge on this point. Thus, whether the jury was given this opportunity was solely dependent upon the unrestricted discretion of the trial judge.[7] Justice Pomeroy, speaking for himself and Justice Roberts, concluded:
 
 
 9
 In my view, the due process and equal protection clauses of the Fourteenth Amendment require the abandonment of the procedure now again sanctioned by the court. Due process is violated where a state procedure denies to those subject to it the fundamental fairness required in a system of ordered liberty. Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The procedure here, grounded as it is upon the exercise of absolute discretion by the trial judge, without the benefit of any objective standards to guide him, is patently arbitrary and unfair.
 
 
 10
 Commonwealth v. Matthews, supra, 285 A.2d at 518.[8]
 
 
 11
 The majority in Matthews did not meet the constitutional issue:
 
 
 12
 Appellant next asserts the trial court committed error in refusing a specific request to instruct the jury on voluntary manslaughter, and also in failing to submit to the jury such a finding as a possible verdict. Since there was no evidence which pointed in the slightest degree to the offense of manslaughter, the court's action did not constitute error. Commonwealth v. LaRue, 381 Pa. 113, 112 A.2d 362 (1955); and Commonwealth v. Flax, 331 Pa. 145, 200 A. 632 (1938).
 
 285 A.2d at 514.[9]
 III.
 
 13
 Thus, to offset Justice Pomeroy's constitutional contentions we must turn to the argument presented by the Commonwealth. It builds first on Sparf v. United States 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), which approved a jury charge given in a trial for murder on the high seas, which charge instructed the jury that it was not authorized to return a verdict of manslaughter because there was no evidence showing that crime. The Court stated: 'A verdict of guilty of an offense less than the one charged would have been in flagrant disregard of all the proof, and in violation by the jury of their obligation to render a true verdict. There was an entire absence of evidence upon which to rest a verdict of guilty of manslaughter or simple assault. A verdict of that kind would have been the exercise by the jury of the power to commute the punishment for an offense actually committed, and thus impose a punishment different from that prescribed by law.' Id. at 64, 15 S.Ct. at 278. Moreover, the Commonwealth directs us to Government of the Virgin Islands v. Carmona, 422 F.2d 95, 101 (3d Cir. 1970), in which we held 'there was no error in failing to charge as to voluntary manslaughter in the circumstances of the instant case. As there was no evidence of a quarrel or fit of passion, the jury could not have correctly found Carmona guilty of voluntary manslaughter,' citing Stevenson v. United States, 162 U.S. 313, 315, 16 S.Ct. 839, 40 L.Ed. 980 (1896).
 
 
 14
 Next, the Commonwealth argues that notwithstanding these and other cases, courts have found it necessary to uphold a defendant's conviction of a lesser included offense where a trial judge erroneously submitted the offense to the jury. The underlying rationale of these latter cases is that the Constitutional prohibition against double jeopardy[10] barred correction of the trial judge's error.
 
 
 15
 But neither Sparf nor Carmona meets the Due Process argument properly presented in these federal habeas corpus proceedings. The Supreme Court in Sparf and this court in Carmona were confronted with issues of statutory construction only;[11] neither discussed the Pennsylvania practice presently under review.[12]
 
 
 16
 The Commonwealth then emphasizes that 'no court has held that because jury instructions not recognized by the law and overly favorable to one defendant were given at his trial, that thereafter every defendant is entitled to those same instructions.'[13] Underlying this argument is the assumption that, in Pennsylvania, the jury could not properly return a verdict of voluntary manslaughter on a murder indictment absent evidence of passion or provocation However the common law[14] and Pennsylvania substantive law recognize the jury's 'power,'[15] indeed 'prerogative,'[16] to return such a verdict if the court submits the issue to them. Moreover, in upholding such verdicts, the Pennsylvania Supreme Court has not relied on double jeopardy grounds but on the twofold consideration stated recently in Commonwealth v. Hoffman, supra, 266 A.2d at 732: 'a realistic appreciation of the humanity of those who sit on our juries, and the legal concept that voluntary manslaughter is by definition a lesser (included) offense than murder but one included in a murder indictment.'
 
 
 17
 Our research has not disclosed a Pennsylvania Supreme Court decision which unequivocally held that, on an indictment for murder, it would be error for a trial judge to charge on voluntary manslaughter where there was no evidence of passion or provocation. The court has had numerous opportunities to do so[17] but instead has framed its holding in terms of what a defendant has a right to expect or whether the trial court's refusal to instruct was in error. These cases still leave the final decision on whether to charge within the discretion of the trial judge. We now proceed to a consideration of the Due Process argument.
 
 IV.
 
 18
 At a time when the contours of procedural due process were beginning to become visible, Mr. Justice Cardozo recognized the difficulty in establishing a universal definition of due process: 'The line of division may seem to be wavering and broken if there is a hasty catalogue of the cases on the one side and the other. Reflection and analysis will induce a different view. There emerges the perception of a rationalizing principle which gives to discrete instances a proper order and coherence. * * * Does it violate those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'?' Palko v. Connecticut, 302 U.S. 319, 325, 328, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).[18] Later Mr. Justice Frankfurter would emphasize that 'regard for the requirements of the Due Process Clause 'inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings (resulting in a conviction) in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952).
 
 
 19
 In the decades which have followed, the Supreme Court has not formulated a bright line definition. But, in discussing the right to a jury trial in a criminal case, the Court expressed this country's historic desire to minimize arbitrary judicial activity: 'The framers of the Constitution strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge. * * * Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power-- a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.' Duncan v. Louisiana, 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968).
 
 
 20
 To recite these broad-base principles is to reinforce the conclusion reached by Pennsylvania Justices Roberts, Pomeroy and Manderino in Commonwealth v. Jones, supra, that the Pennsylvania practice did not comport with the protections extended this appellee by the Constitution. At the time he was tried, the jury was given the option of returning a verdict of murder in the first degree calling for life imprisonment or death,[19] or alternatively, a verdict of murder in the second degree, calling for a sentence of up to twenty years. Another trial judge, or the same judge on another day, could have permitted the jury to return a verdict of voluntary manslaughter, calling for a sentence of no more than twelve years. To deny appellee the possibility of a lesser verdict with a lesser restraint of liberty is permissible only if the denial comports with due process. To deny appellee the possibility of a lesser restraint of liberty because of a practice which permits arbitrary trial court activity is offensive to those settled concepts of due process.
 
 
 21
 The opinion in support of affirmance[20] in Commonwealth v. Davis, supra, 297 A.2d at 821, essentially acknowledged the absence of standards prior to May 2, 1974: 'The establishment of objective standards for application in all cases must await further development of our case law . . ..' A lack of any standard to guide a decision which has the capability of restricting the liberty or property of a defendant would seem to offend settled concepts of due process. Thus, in invalidating a Pennsylvania practice which failed to furnish a criminal court jury with standards to guide a decision as to whether costs should be imposed upon a defendant in whose favor a not guilty verdict was rendered, the Supreme Court found the practice 'vague and standardless,' and therefore offensive to due process:
 
 
 22
 It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. See e.g., Lanzetta v. New Jersey, 306 U.S. 451 (59 S.Ct. 618, 83 L.Ed. 888); Baggett v. Bullitt, 377 U.S. 360 (, 84 S.Ct. 1316, 12 L.Ed.2d 377). This 1860 Pennsylvania Act contains no standards at all, nor does it place any conditions of any kind upon the jury's power to impose costs upon a defendant who has been found by the jury to be not guilty of the crime charged against him. * * * Certainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce. This state Act as written does not even begin to meet this constitutional requirement.
 
 
 23
 Giaccio v. Pennsylvania, 382 U.S. 399, 402-403, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966).
 
 
 24
 It is undisputed that there are no 'legal standards that courts must enforce' in giving or not giving the manslaughter charge in a Pennsylvania murder indictment. Accordingly, we conclude that the powerful rationale of Giaccio commands a similar result in thie case.
 
 
 25
 We believe that the safeguards of due process will be satisfied only when all defendants in Pennsylvania murder trials are given the same opportunity, upon request duly made, to have a jury return a verdict of voluntary manslaughter as well as first and second degree murder.[21] To hold otherwise is to expose a defendant to the idiosyncracies of the trial judge to whom the case has been assigned, or the 'whim or caprice'[22] of a given judge on a given day. Accordingly, we affirm the judgment of the district court.22a
 
 V.
 
 26
 The Commonwealth advances the argument that 'if this Court should conclude that a valid constitutional issue is presented, it would be inappropriate to reverse Matthews' conviction.' (Commonwealth brief at 6 n.1.) It reasons that this defendant has suffered no prejudice because the jury in fact returned a verdict of first degree and not second degree murder. Thus, the Commonwealth argues harmless error. This contention overlooks the possibility that if a jury had three options instead of two, the jury could have compromised on the middle ground of second degree. Although of course no one can say with precision that given three alternatives, the jury has a greater probability of compromise, we do recognize that with three alternatives, at least 'there is a reasonable possibility' of compromise. Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).[23] Therefore, we cannot say that failure to give the charge 'was harmless beyond a reasonable doubt.' Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Moreover, the Pennsylvania Supreme Court has long recognized and approved the compromising propensities of juries. Commonwealth v. Kellyon, supra, 122 A. at 168; Commonwealth v. Hoffman, supra, 266 A.2d at 732. This recognition dilutes the potency of the harmless error argument advanced by the Commonwealth.
 
 VI.
 
 27
 Cognizant of the potential pervasive ramifications of the ruling we announce today, Judges Rosenn, Weis and the writer of this opinion are willing to consider the retroactivity issue. A majority of the court have concluded that the issue should not be resolved in this case.
 
 
 28
 In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the Court squarely decided the retroactivity issue when it announced its ruling:
 
 
 29
 We have considered the suggestion . . . that we should 'give prospective application only to any new constitutional ruling in this area.' . . . (We) have concluded that neither the reliance of law enforcement officials . . . nor the impact of a retroactive holding on the administration of justice . . . warrants a decision against the fully retroactive application of the holding we announce today.
 
 
 30
 391 U.S. at 523 n. 22, 88 S.Ct. at 1777. And in its most recent pronouncement in the area of prisoners' rights, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court had the opportunity to defer ruling on the retroactivity of its newly announced procedures. It did not. Instead, the Court followed its lead in Morrissey v. Brewer, 408 U.S. 471, 490, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and decided the retroactivity issue:
 
 
 31
 The Court of Appeals held that the due process requirements in prison disciplinary proceedings were to apply retroactively so as to require that prison records containing determinations of misconduct, not in accord with required procedures, be expunged. We disagree and reverse on this point.
 
 
 32
 The question of retroactivity of new procedural rules affecting inquiries into infractions of prison discipline is effectively foreclosed by this Court's ruling in Morrissey that the due process requirements there announced were to be 'applicable to Future revocations of parole,' 408 U.S., at 490 (92 S.Ct. at 2604). Despite the fact that procedures are related to the integrity of the fact-finding process, in the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the significant impact a retroactivity ruling would have on the administration of all prisons in the country, and the reliance prison officials placed, in good faith, on prior law not requiring such procedures. During 1973, the Federal Government alone conducted 19,000 misconduct hearings, as compared with 1,173 parole revocation hearings, and 2,023 probation revocation hearings. If Morrissey-Scarpelli rules are not retroactive out of consideration for burden on federal and state officials, this case is a fortiori. We also note that a contrary holding would be very troublesome for the parole system since performance in prison is often a relevant criteria for parole. On the whole, we do not think that error was so pervasive in the system under the old procedures to warrant this cost or result.
 
 
 33
 418 U.S. at 573, 94 S.Ct. at 2983. Thus, we find no precedential impediment to reaching the retroactivity issue in this case.
 
 
 34
 In United States v. Zirpolo, 450 F.2d 424, 431-433 (3d Cir. 1971), we set forth in detail the basic teachings of the Supreme Court.[24] Basically we observed:
 
 
 35
 In passing on the question of retroactivity, the Supreme Court considers three factors: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970 (18 L.Ed.2d 1199) (1967); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).
 
 
 36
 450 F.2d at 432.
 
 
 37
 ' Foremost among . . . (the foregoing) factors is the purpose to be served by the new constitutional rule.' Desist v. United States, supra,394 U.S. at 249, 89 S.Ct. at 1033. In United States v. Zirpolo, supra, we noted that 'generally, rulings not primarily designed to enhance the reliability of the fact-finding or truth-determining process have not been applied retroactively,' 450 F.2d at 432 and cases cited therein. We are dealing here only with those cases in which there is no evidence of passion or provocation.[25] Therefore, our ruling does not go to the jury's ability to determine the presence vel non of the elements of the crime but rather to the jury's ability to exercise its 'historically recognized mercy dispensing power.' Commonwealth v. Jones, supra, 319 A.2d at 149 (Nix, J.) Nothing we decide today affects the fact-finding process. We also recognize with Mr. Justice Brennan that "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' Johnson v. New Jersey . . . (384 U.S. 719), at 728-729, (86 S.Ct. at 1778). The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities.' 384 U.S., at 729 (86 S.Ct. at 1778). Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice.' Stovall v. Denno, supra, 388 U.S. at 298, 87 S.Ct. at 1970.
 
 
 38
 The significant extent to which the Pennsylvania trial courts relied on the prior state of the law is obvious. See Commonwealth v. Matthews, supra; Commonwealth v. LaRue, supra; and Commonwealth v. Pavillard, supra. The decision we reach today was not foreshadowed by prior cases. Stovall v. Denno, supra, 388 U.S. at 299, 87 S.Ct. 1967. And we recognize that the application of full retroactivity could have a profound effect on the administration of criminal justice in Pennsylvania. The Supreme Court has relied on this factor in denying full retroactivity: United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (line-up cases) held non-retroactive in Stovall v. Denno, supra; McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (on the correct procedure for acceptance of guilty plea) denied retroactive application in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).
 
 
 39
 All three considerations indicate that full retroactivity should not be accorded this decision. See cases collected in United States v. Zirpolo, supra, 450 F.2d at 431-433. As in Zirpolo, we would 'conclude that our decision . . . (should) apply only to those cases . . . (in which a jury instruction for voluntary manslaughter was properly and timely requested and) if trials have been completed, are on direct appeal (in the Pennsylvania courts) on this date.' 450 F.2d at 433.
 
 
 40
 The judgment of the district court granting a writ of habeas corpus will be affirmed unless the Commonwealth of Pennsylvania affords Matthews a new trial within such reasonable time as the district court shall fix following return of the mandate.
 
 ADAMS, Circuit Judge (concurring):
 
 41
 In concur with the majority's conclusion that the Pennsylvania practice challenged here operated to deprive Matthews of due process of law.
 
 
 42
 Ordinarily, I exercise great caution and considerable hesitancy before concluding that a state practice or statute is unconstitutional. However, the Supreme Court of Pennsylvania has just recently ordained that, upon request, every murder defendant in the Commonwealth is entitled to a voluntary manslaughter instruction, whether in felony murder or general murder trials.[1] Although that ruling is, by its terms, made prospective only, it indicates that Pennsylvania has abandoned whatever stake it may have had in the rule of criminal procedure that a defendant is not entitled to such an instruction absent evidence of passion or provocation. Thus, the effect worked upon Pennsylvania's criminal justice system by the Court's ruling today is not seriously at odds with Pennsylvania's own perception of its interests. In these circumstances, we generate no undue friction, or at least a minimum of exacerbation, between a state and the federal system by holding the former Pennsylvania practice unconstitutional.
 
 
 43
 I agree with the majority that the lack of any articulable criteria for the giving or withholding of a manslaughter instruction where there was no evidence of passion or provocation made for standardless, 'ad hoc and episodic' justice,[2] and as such constituted a violation of due process.[3] It would seem unwise, however, simply to accept a statement from a dissenting opinion in Commonwealth v. Matthews[4] as a conclusive exposition of prior Pennsylvania practice. Rather, in my judgment, we are bound to survey all the Pennsylvania Supreme Court opinions on the subject, and to determine from them what appears to have been the Pennsylvania rule or practice. Having undertaken such an examination, I am satisfied that, in the past, trial judges in Pennsylvania had discretion to give or withhold a manslaughter instruction where no evidence of passion or provocation had been adduced. In no case that has come to my attention did the giving or withholding of the instruction lead to a reversal, or even to critical comment by the reviewing tribunal.
 
 
 44
 The dissent has pointed out that Matthews was found guilty of felony murder, as distinguished from a general murder charge, and that, whatever the situation regarding general murder, a judge under Pennsylvania law is 'justified in refusing to charge upon the law of manslaughter' in a felony murder prosecution.[5] This view is grounded in the recognition that it is not logical to speak of 'passion or provocation' when felony murder is involved.[6] Although there are cases which hold that a defendant is not entitled to a manslaughter charge when there is no evidence of passion or provocation in the record, no case has been called to my attention that has mandated the withholding of a manslaughter charge in a felony murder case, and, indeed, there appears to be some indication that manslaughter charges have been given, from time to time, when there has been no evidence of passion or provocation. It is apparent, therefore, that state trial judges were without standards, supplied either by the legislature or by the appellate courts, to guide them in the giving or withholding of voluntary manslaughter instructions, not only in cases of general murder but in felony murder cases as well.
 
 
 45
 Moreover, there is no indication that Pennsylvania trial judges, themselves, felt constrained by any standards in the giving or withholding of such an instruction, whether in general murder or felony murder cases. A review of state decisions would appear to disclose that while some juries were given the instruction, others were not,[7] and no explanation for giving or withholding such an instruction was required. Thus, besides fostering the potential for prejudice and arbitrariness, the prior Pennsylvania practice appears actually to have resulted in unexplicated discrimination among murder defendants.[8]
 
 
 46
 Nor can this discrimination be deemed harmless beyond a reasonable doubt, since there is no way of ascertaining how the jury in this case would have responded had it been given a manslaughter instruction.[9]
 
 KALODNER, Circuit Judge (dissenting):
 
 47
 In the instant case the relator Matthews, acting in concert with his nephew and a friend, robbed one Butts, and during the perpetration of the robbery one of the felons stabbed Butts in the back four times with an eight-inch knife causing Butts' death several hours later.
 
 
 48
 Matthews was tried to a jury on an indictment charging him with first degree murder of Butts. The trial judge, in accordance with Pennsylvania law, instructed the jury that 'you may find the defendant guilty of murder in the first degree, you may find the defendant guilty of murder in the second degree, or you may find the defendant not guilty.'[1] The jury found him guilty of first degree murder and fixed a sentence of life imprisonment. Matthews appealed to the Pennsylvania Supreme Court contending, inter alia, that the trial judge erred in refusing his request for a voluntary manslaughter instruction on the ground that the evidence afforded no basis for such an instruction. The Supreme Court rejected that contention and affirmed the judgment of sentence, Justices Roberts and Pomeroy dissenting. Commonwealth v. Matthews, 446 Pa. 65, 285 A.2d 510 (1971).
 
 
 49
 The majority, despite its acknowledgement that counsel for Matthews conceded at oral argument of this appeal that no evidence was adduced at the murder trial bearing on voluntary manslaughter, nevertheless holds that Matthews was denied due process when the trial judge refused for that reason to grant Matthews' request for a voluntary manslaughter instruction.
 
 
 50
 The majority has presented three grounds for its holding that Matthews was denied his Fourteenth Amendment due process guarantees.
 
 
 51
 Stated in the order of their discussion in the majority opinion, they are as follows:
 
 
 52
 (1) 'In a prosecution on a murder indictment, the Fourteenth Amendment requires the trial court, upon request, to give the jury the option of returning a verdict of voluntary manslaughter.'
 
 
 53
 (2) The Fourteenth Amendment is violated when a voluntary manslaughter instruction is denied for lack of evidentiary basis because 'although the jury has unfettered power to return a voluntary manslaughter verdict as a lesser included offense of a murder indictment, it could not do so if the trial judge refused to charge on this point.'
 
 
 54
 (3) The Fourteenth Amendment is violated when a request for a voluntary manslaughter instruction is denied on the ground that it lacks evidentiary basis, because Pennsylvania judges have at times given the instruction in the absence of evidence calling for such instruction.
 
 
 55
 I disagree with the majority's holding that Matthews was denied due process and its stated grounds for that holding for these reasons:
 
 
 56
 First, as to the majority's point that 'in a prosecution on a murder indictment, the Fourteenth Amendment requires the trial court, upon request, to give the jury the option of returning a verdict of voluntary manslaughter.'
 
 
 57
 The sum of that point is that due process 'requires' a voluntary manslaughter instruction in a murder trial even though there is no evidentiary basis for such an instruction, viz., evidence of passion and provocation-- critical ingredients of the crime of voluntary manslaughter.
 
 
 58
 The majority has not cited any case, federal or state, in support of the stated point, for the very good reason that there is none.
 
 
 59
 To the contrary, it was expressly ruled in Sparf v. United States, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), that the murder trial judge there did not err when he (1) refused 'upon request' to give a voluntary manslaughter instruction because of lack of evidentiary basis for such instruction; and (2) instructed the jury that it could not properly return a voluntary manslaughter verdict in the absence of evidence establishing commission of that crime. 156 U.S. at 103, 15 S.Ct. 273.
 
 
 60
 In Bird v. United States, 187 U.S. 118, 132, 23 S.Ct. 42, 47, 47 L.Ed. 100 (1902), it was explicitly held that the murder trial judge 'rightly refused' a requested instruction defining principal and accessory, 'because there were no facts in the case to justify it.'
 
 
 61
 The vitality of the holding in Sparf that a trial judge is not required, 'upon request' to grant an instruction lacking evidentiary basis is attested to by its recent citation and application in other contexts. Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); Sansone v. United States, 380 U.S. 343, 350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); and Berra v. United States, 351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013 (1956).[2]
 
 
 62
 In Keeble, it was said at 412 U.S. page 208, 93 S.Ct. at page 1995:
 
 
 63
 'Although the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'
 
 
 64
 This court has specifically held that a trial court does not err in failing to give a voluntary manslaughter instruction where it lacks evidentiary basis. Government of the Virgin Islands v. Carmona, 422 F.2d 95, 191 (3d Cir. 1970). It may be noted parenthetically that Carmona was cited by Keeble as being in accord with its holding. 412 U.S. at 208 n.7, 93 S.Ct. 1993.
 
 
 65
 The Pennsylvania Supreme Court, too, has consistently held that a murder trial judge does not err when he fails or refuses, to give a voluntary manslaughter instruction where there is no evidence to support such an instruction.[3]
 
 
 66
 The majority makes short shrift of Sparf and Carmona on the ground that 'the Supreme Court in Sparf and this court in Carmona were confronted with issues of statutory construction only; neither discussed the Pennsylvania practice presently under review.'
 
 
 67
 The plain fact is that neither Sparf nor Carmona turned on an issue of 'statuory construction'[4] and that in both the deciding courts perceived no due process issue in the trial judge's failure, or refusal, to give a voluntary manslaughter instruction in the absence of an evidentiary basis.
 
 
 68
 It may be noted parenthetically that the federal and Pennsylvania doctrine that a trial judge is not required to give a voluntary manslaughter instruction unless the evidence calls for such instruction, is in accord with the prevailing general rule. 40 Am.Jur.2d 485, at 737 (1968), set forth in the margin.[5] What has been said brings us to the majority's point that the Fourteenth Amendment is violated when a voluntary manslaughter instruction is denied for lack of evidentiary basis because 'although the jury has unfettered power to return a voluntary manslaughter verdict as a lesser included offense of a murder indictment, it could not do so if the trial judge refused to charge on this point.'
 
 
 69
 The majority's statement that a jury 'could not' return a voluntary manslaughter verdict 'if the trial judge refused to charge on this point' is difficult to understand in light of its correct statement that a jury 'has unfettered power to return a voluntary manslaughter verdict as a lesser included offense of a murder indictment.'
 
 
 70
 The majority has not cited a single Pennsylvania case in support of its statement that a jury 'could not' return a voluntary manslaughter verdict 'if the trial judge refused to charge on this point.' The cases it discusses on the score of that statement afford it no nourishment whatsoever.
 
 
 71
 To the contrary, it was recently explicitly held in Commonwealth v. Cannon, 453 Pa. 389, 309 A.2d 384 (1973) that a jury 'can' return a voluntary manslaughter verdict on a murder indictment even though the trial judge refused a request for a voluntary manslaughter instruction.
 
 
 72
 In Cannon the defendant was convicted of first degree murder. He contended on his appeal that the trial judge erred in refusing his request for a voluntary manslaughter instruction for lack of evidentiary basis.
 
 
 73
 In affirming the refusal of the requested instruction the court said:
 
 
 74
 'Where a defendant is indicted for murder, he can of course be convicted of manslaughter. See Commonwealth v. Dennis, 433 Pa. 525, 252 A.2d 671 (1969). But where there is no evidence of the elements of manslaughter, it is not error for the trial judge to refuse to submit manslaughter as a possible verdict. (citing cases). Without evidence of a sufficient cause for provocation, a state of rage or passion and an inadequate time to cool, the trial court is justified in denying the request for a manslaughter instruction.' 453 Pa. at 396-397, 309 A.2d at 389.
 
 
 75
 It may be noted parenthetically that Mr. Justice Roberts, in dissenting in Cannon on the ground that the trial judge erred in refusing the defendant's request for a voluntary manslaughter instruction, cited 'the salutary and wellsettled rule' that 'the jury may find the accused guilty of the less offense (voluntary manslaughter) . . . and a conviction . . . will be sustained.' 453 Pa. 399, 309 A.2d at 390.
 
 
 76
 The Pennsylvania Supreme Court has in recent years, time and again, affirmed a jury's absolute 'prerogative' to return a voluntary manslaughter verdict where there is evidence to support a conviction for murder even though there is no proof justifying the voluntary manslaughter verdict. Commonwealth v. Butcher, 451 Pa. 359, 364-365, 304 A.2d 150 (1973); Commonwealth v. Hoffman, 439 Pa. 348, 356-357, 266 A.2d 726, 731 (1970).[6]
 
 
 77
 In Butcher and Hoffman, the defendants were found guilty of voluntary manslaughter on indictments charging them with murder. In both cases defendants challenged their conviction on the ground that there was no evidence of passion and provocation, the critical ingredients of the crime of voluntary manslaughter.
 
 
 78
 In rejecting that contention, the court in Butcher said:
 
 
 79
 'Appellant's last argument is that a verdict of voluntary manslaughter should not be permitted when the evidence does not support such a verdict. However, this Court has consistently held that a jury may in a murder prosecution return a verdict of voluntary manslaughter even where there is no evidence of passion or provocation. As stated in Commonwealth v. Hoffman, 439 Pa. 348, 356-357, 266 A.2d 726, 731 (1970): 'Few propositions are better established in the criminal law than the doctrine that where the evidence would be sufficient to support a conviction of murder, the return of a verdict of voluntary manslaughter is strictly within the jury's prerogative even in the absence of provocation and passion." 451 Pa. at 364, 304 A.2d at 153.
 
 
 80
 The 'power' of a jury in a murder case to convict of a lesser offense or to acquit in disregard of the evidence was succinctly epitomized, almost a century ago, in McMeen v. Commonwealth, 114 Pa. 300, 9 A. 878 (1886), as follows:
 
 
 81
 'It is true the jury have the power even in cases of murder by poison to convict of a lesser grade of crime. So they have the power in such cases to acquit altogether in the face of the clearest evidence.' 114 Pa. at 305-306, 9 A. at 879.
 
 
 82
 Coming now to the majority's point that the Fourteenth Amendment is violated when a request for a voluntary manslaughter instruction is denied on the ground that it lacks evidentiary basis, because Pennsylvania judges have at times given the instruction in the absence of evidence calling for such instruction:
 
 
 83
 The sum of the majority's position is that while a murder trial judge does not when he denies a voluntary manslaughter instruction for lack of evidentiary basis, the circumstance that judges have at times given the instruction in the absence of evidentiary basis, demonstrates that 'there are no 'legal standards that courts must enforce's in giving or not giving the manslaughter charge in a Pennsylvania murder indictment,' and consequently the refusal of the instruction must be held to be a violation of due process under 'the powerful rationale' of Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).
 
 
 84
 I disagree with the majority's stated position for these reasons:
 
 
 85
 First, we are here concerned with a felony-murder-- a homicide committed in the perpetration of a robbery,[7] and the Supreme Court of Pennsylvania, a half-century ago, announced the 'legal standard' that in the commission of such a homicide evidence of existence of passion and provocation-- critical ingredients of voluntary manslaughter-- is of no relevance. Commonwealth v. Maleskie, 278 Pa. 387, 123 A. 310 (1924).
 
 
 86
 Second, and independently so, a defendant in a murder trial felony or otherwise, is not denied due process when he is correctly refused a voluntary manslaughter instruction for lack of evidentiary basis simply because in some instances judges have incorrectly given the instruction in the absence of evidentiary basis. Otherwise stated, a murder trial defendant is not deprived of due process when he is refused an instruction to which he is not entitled by law just because a similarly situated defendant has been incorrectly accorded an instruction to which he is not entitled by law.
 
 
 87
 Third, Giaccio v. Pennsylvania, supra, is inapposite on its facts and does not point to the result reached by the majority nor afford it an iota of support.
 
 
 88
 Elaboration of my foregoing views must be prefaced by these observations:
 
 
 89
 The majority's denial of due process holding, insofar as it is premised on its 'no legal standards' theory, echoes and adopts the view of Mr. Justice Pomeroy in his dissent to the affirmance of Matthew's conviction by the Pennsylvania Supreme Court, and in his subsequent dissent to the affirmance of the defendant's murder conviction in Commonwealth v. Davis, 449 Pa. 468, 479-480 (1972).[8]
 
 
 90
 It must immediately be noted than an application for certiorari was denied in the Divis case, sub nom. Davis v. Commonwealth, 414 U.S. 836, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973). The application, in its 'Reasons for Granting the Writ,' urged almost verbatim the reasoning of Justice Pomeroy's dissent in Davis (and Matthews) to which the majority here subscribes.[9] It also invoked Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and Giaccio v. Pennsylvania, supra, here relied on by the majority. Moreover, it cited the subscription of the district court in the instant case to the Pomeroy position.
 
 
 91
 It cannot be gainsaid that while the denial of certiorari in Commonwealth v. Davis, supra, is not here of dispositive dimension it is nevertheless of illuminating significance.
 
 
 92
 What has been said brings me to a seriatim discussion of my earlier stated three reasons for my disagreement with the 'no legal standards that courts must enforce' phase of the majority's denial of due process holding.
 
 
 93
 The first of these reasons is that we are here concerned with a felony-murder-- a homicide committed in the perpetration of a robbery, and the Pennsylvania Supreme Court, a half century ago, did announce the 'legal standard' that in the commission of such a homicide evidence of passion and provocation-- the ingredients of voluntary manslaughter-- is of no relevance. Commonwealth v. Meleskie, supra.
 
 
 94
 In Meleskie, the defendant killed a Woman he was attempting to rape. He was tried and convicted of felony murder in the first degree after the trial judge instructed the jury that there was no evidence of manslaughter in the case. He contended on his appeal that the trial judge erred in his instruction in light of the testimony that after the defendant had thrown the murder victim to the floor in his rape attempt "she hit him in the face . . . she bit his finger, and then he got mad and . . . shot (her) two times and shot himself once."
 
 
 95
 The Pennsylvania Supreme Court rejected the defendant's contention and affirmed his conviction.
 
 
 96
 In doing so it said at pages 386 and 387 of 278 Pa., at pages 311 of 123 A.:
 
 
 97
 Barbarous indeed would be a law permitting the plea of provocation and hot blood to a man who, when attempting rape, flies into a frenzy and kills his victim because she forcibly defends herself against his criminal purposes; but no such rule exists in our criminal jurisprudence . . .. This grave offense would not be mitigated because, at the time of the killing, defendant's wrath was kindled by the forcible endeavors of his victim to protect herself, and, under the circumstances, the trial judge was justified in refusing to charge upon the law of manslaughter: Com. v. Spardute, 278 Pa. 37 (122A. 161).'
 
 
 98
 Meleskie was cited and followed in 1972 in Commonwealth v. Davis, supra. There the defendant was found guilty of murder in the first degree in the killing of a nine-year old girl in an attempt to commit rape or sodomy, after the trial judge had refused to give a voluntary manslaughter instruction and instead instructed the jury that it could not consider manslaughter.
 
 In doing so the trial judge told the jury:
 
 99
 'Normally, when the charge is murder, the jury may also consider the charge of voluntary manslaughter. However, I instruct you as a matter of law in this case that manslaughter could not be considered. It would not be, under the facts in this case, an appropriate verdict. So, therefore, I instruct you to confine your consideration to the charge of murder in the first degree, or the charge of murder in the second degree, or not guilty. You have three possibilities.' 449 Pa. at 473, 297 A.2d at 821.
 
 
 100
 The defendant in Davis contended on his appeal that the trial judge erred in his binding instructions to the jury that 'manslaughter could not be considered.'
 
 
 101
 The Supreme Court, by a four to three vote, rejected the defendant's contention and, citing Meleskie, affirmed on the ground that the defense of manslaughter is unavailable to a defendant in a felony-murder trial, viz., homicide in an attempt to commit the felonies of rape or sodomy.
 
 In doing so the Court said:
 
 102
 'Although the establishment of objective standards for application in all cases must await the further development of our case law, we believe that the instant case presents an excellent example of that type of case where it is perfectly proper for a trial judge to eliminate completely the jury's consideration of the possibility of a voluntary manslaughter verdict. This is not a case where the court may be arrogating to itself the jury's fact-finding function by telling the jury that it believes there is no evidence of passion and provocation such as would reduce a murder to manslaughter. Nor is this a case where a defendant may be penalized because he completely denied an intentional killing rather than claim mitigating circumstances surrounded it. Instead, it is a case where any evidence of passion or provocation would be irrelevant. The record clearly shows that whoever committed this murder did so pursuant to an attempt to commit rape or sodomy on the victim. Since rape is one of the enumerated felonies, a homicide committed in the perpetration of this crime is a first-degree murder. Act of June 24, 1939, P.L. 872, 701, as amended December 1, 1959, P.L. 1621, 1, 18 P.S. 4701. The malice necessary to make a homicide murder is implied from the presence of the intent to commit the felony. The presence of passion or provocation cannot negate this malice. The fact that, at the time the killing was committed, the rapist may have been in a state of passion, perhaps out of rage at his victim's resistance or fear that his felony would be discovered, would make no difference. If he had the culpability to commit the rape, then when he killed in the furtherance of that felony, he is deemed to have killed with malice. See Commonwealth v. Meleskie, 278 Pa. 383, 123 A. 310 (1924).' 449 Pa. at 475, 297 A.2d at 821.
 
 
 103
 The majority has failed to take into account that we are here concerned with a felony-murder and sequentially overlooked the existence of the settled Pennsylvania 'legal standard' pertaining to the non-availability of a voluntary manslaughter defense in a felony-murder trial.
 
 
 104
 Standing alone, and independently so, a defendant in a murder trial, felony or otherwise, is not denied due process when he is refused a voluntary manslaughter instruction to which he is not entitled under the evidence simply because defendants in other murder trials have been accorded a voluntary manslaughter instruction in the absence of any evidentiary basis for such an instruction.
 
 
 105
 The Pennsylvania courts, in murder cases aside from those within the felony-murder category, have consistently held that both "sufficient cause of provocation and a state of rage or passion, without time to cool" must be established by the evidence in order to sustain a voluntary manslaughter charge.[10]
 
 
 106
 As earlier stated, the Supreme Court of Pennsylvania has repeatedly specifically held that the failure or refusal to charge on voluntary manslaughter in non-felony murder cases is not error where there is no evidence to support a voluntary manslaughter verdict.[11]
 
 
 107
 The majority holds that albeit the Pennsylvania Supreme Court has consistently ruled that failure or refusal to charge on voluntary manslaughter in the absence of evidentiary basis, it has not 'unequivocally held that . . . it would be error for a trial judge to charge on voluntary manslaughter where there was no evidence of passion or provocation,' and it therefore follows that 'the final decision on whether to charge (is) within the discretion of the trial judge.'
 
 
 108
 The ready answer to the majority's reasoning is that errors favorable to a defendant are considered harmless and are therefore disregarded on appeal. Grunewald v. United States, 353 U.S. 391, 396-397, 77 S.Ct. 963, 1 L.Ed.2d 931 n. 9 (1957).[12]
 
 
 109
 The majority has not cited any case in any jurisdiction in which an appellate court has reversed a conviction because the defendant was given a favorable instruction not justified by the evidence. Nor has the majority cited any holding by an appellate court that due process is violated where defendant is properly denied an instruction for lack of evidentiary basis just because another defendant has been accorded a favorable instruction to which he was not entitled under the evidence. The district Court's holding in the instant case is without precedent at either the trial or appellate level.
 
 
 110
 Coming now to my view that Giaccio v. Pennsylvania, supra, is inapposite on its facts and does not point to the result reached by the majority nor afford it any support:
 
 
 111
 In Giaccio, a jury acquitted the appellant on a misdemeanor indictment but assessed 'costs' against him under a Pennsylvania statute permitting jurors to 'determine by their verdict, whether the (acquitted) defendant shall pay the costs,' and providing for his commitment to jail in default of payment or security. The jury had been instructed that it could impose the costs on appellant even though it acquitted him if it found him guilty of 'some misconduct.'
 
 
 112
 The Court held that the statute was unconstitutional under the due process clause 'because of vagueness and the absence of any standards sufficient to enable defendants to protect themselves against arbitrary and discriminatory impositions of costs.' In so holding the Court said:
 
 
 113
 'This 1860 Pennsylvania Act contains no standards at all, nor does it place any conditions of any kind upon the jury's power to impose costs upon a defendant who has been found by the jury to be not guilty of a crime charged against him.' 382 U.S. at 402-403, 86 S.Ct. at 521.
 
 
 114
 Of imperative significance here is the fact that in holding the Pennsylvania Act violative of due process the Court said in a footnote:
 
 
 115
 'In so holding we intend to cast no doubt whatever on the constitutionality of the settled practice of many States to leave to juries finding defendants guilty of a crime the power to fix punishment within legally prescribed limits.' 382 U.S. at 405 n. 8, 86 S.Ct. at 522.
 
 
 116
 The foregoing note was cited and quoted in McGautha v. California, 402 U.S. 183, 207 n. 18, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), where the court cautioned against federal ex cathedra imposition of standards in the conduct of state murder trials.
 
 In so doing it said:
 
 117
 'Our function is not to impose on the States, ex cathedra, what might seem to us a better system for dealing with capital cases. Rather, it is to decide whether the Federal Constitution proscribes the present procedures of these two States in such cases.' 402 U.S. at 195-196, 91 S.Ct. at 1461.
 
 
 118
 . . . .2 U
 
 
 119
 'The Federal Constitution, which marks the limits of our authority in these cases, does not guarantee trial procedures that are the best of all worlds, or that accord with the most enlightened ideas of students of the infant science of criminology, or even those that measure up to the individual predilections of members of this Court.' 402 U.S. at 221, 91 S.Ct. at 1474.
 
 
 120
 The late Mr. Justice Black, in his concurring 'Separate Opinion,' pinpointed the ex cathedra caution of the majority in this graphic statement:
 
 
 121
 'The Constitution grants this Court no power to reverse convictions because of our personal beliefs that state criminal procedures are 'unfair,' 'arbitrary,' 'capricious,' 'unreasonable,' or 'shocking to our conscience.' (citing cases). Our responsibility is rather to determine whether petitioners have been denied rights expressly or impliedly guaranteed by the Federal Constitution as written.' 402 U.S. at 225-226, 91 S.Ct. at 1476.
 
 
 122
 In Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Court held that neither the specific provisions of the Constitution nor cases decided under the due process clause established the Supreme Court as the rulemaking organ for the promulgation of state rules of criminal procedure.
 
 
 123
 In conclusion, for each of the reasons stated in this dissent, I would reverse the Order of the District Court which granted Matthews petition for the habeas writ, and remand with directions to deny the petition.
 
 APPENDIX
 
 124
 The 'Reasons for Granting the Writ,' set forth in the petition for a writ of certiorari in Commonwealth v. Davis,[13] denied sub nom. Davis v. Commonwealth, 414 U.S. 836, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973), parallels the reasoning of the majority and Judge Adams in his concurring opinion, as evidenced by the following statements in the Davis 'Reasons':
 
 
 125
 'Highlighting the arbitrary and unequal application of the law to defendants charged with the crime of murder is the fact that some trial courts in Pennsylvania always give a charge on voluntary manslaughter, whether requested or not, and regardless of whether a factual basis for such a finding exists while other trial courts never give a charge on voluntary manslaughter, even when so requested, unless a factual basis for such a charge exists. See dissenting opinion in Commonwealth v. Kenney, 449 Pa. 562 (297 A.2d 794) (1972).
 
 
 126
 'Because the choice whether or not to charge is discretionary with the trial judge, and he has been furnished with no objective standards for his guidance, the existing state of Pennsylvania law offends due process; and because the practice denies the same treatment to similarly situated defendants who happen to stand before differently disposed judges, it violates the equal protection of the laws. In allowing the trial judge complete discretion in deciding whether or not to submit voluntary manslaughter to the jury as a possible verdict in a case where there is no evidence of passion or provocation with absolutely no standards to guide him and no safeguards to militate against the exercise of whim or caprice, there is sanctioned by the court a procedure which violates due process in denying to those subject to it the fundamental fairness required in a system of ordered liberty. Rochin v. California, supra.' . . .
 
 
 127
 As earlier stated in my dissent, the 'Reasons' also cited Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).
 
 
 
 [1]
 Commonwealth v. Davis, 449 Pa. 468, 297 A.2d 817 (1972)
 
 
 [2]
 Since May 2, 1974, Pennsylvania substantive law requires the manslaughter instruction to be given. In an equally divided court three justices (Roberts, Pomeroy and Manderino) rested the decision on constitutional grounds. Three (Nix, Eagen and O'Brien) relied on an exercise of the court's supervisory power: 'We therefore, under our supervisory power, rule that henceforth a defendant under indictment of murder will be entitled, upon request, to have the jury advised of its power to return a verdict of voluntary manslaughter.' Commonwealth v. Jones, Pa., 319 A.2d 142, 148 (1974) (Nix, J.). Because the new Pennsylvania rule does not apply to this appellant we must still decide the constitutional issues raised in this appeal
 
 
 [3]
 Where the evidence would be sufficient to support a conviction of murder, the return of a verdict of voluntary manslaughter is strictly within the jury's prerogative even in the absence of provocation and passion. Commonwealth v. Hoffman, 439 Pa. 348, 356-357, 266 A.2d 726, 731 (1970). See Commonwealth v. Butcher, 451 Pa. 359, 304 A.2d 150, 153 (1973). See also authorities collected in Commonwealth v. Jones, supra, separate opinions of Nix, J., p. 146 n. 2; Roberts J., p. 144 n. 1
 
 
 [4]
 Commonwealth v. LaRue, 381 Pa. 113, 112 A.2d 362 (1955)
 
 
 [5]
 The difference in culpability between first or second degree murder and voluntary manslaughter is reflected in the punishments which accompanied conviction of these respective offenses at the time of this offense. A conviction for first degree murder carried with it death or life imprisonment. Sanctions that were imposed upon one found guilty of second degree murder included imprisonment for a term not exceeding twenty years and a fine of up to ten thousand dollars. Act of June 24, 1939, P.L. 872, 701, 18 Pa.Stat.Anno. 4701. Punishment for voluntary manslaughter, in contrast, could not exceed twelve years imprisonment and six thousand dollars fine. Act of June 24, 1939, supra, 703, 18 Pa.Stat.Anno. 4703. Title 18 of the Consolidated Prnnsylvania Statutes was amended December 6, 1972, effective June 6, 1973. The punishment for first degree murder remains the same. Act of December 6, 1972, P.L. , No. 334, 1, 18 Pa.Stat.Anno. 1102 (1973). Punishment for second degree murder is imprisonment for not more than twenty years. Voluntary manslaughter is punishable by imprisonment for not more than ten years. Act of December 6, 1972, supra, 1, 18 Pa.Stat.Anno. 1103. The maximum punishment for voluntary manslaughter has been reduced by two years
 
 
 [6]
 At oral argument before this court, counsel for Matthews conceded that there was no evidence of provocation or passion presented at trial
 As we have noted, supra, n. 2, Pennsylvania trial judges must now grant the request for a voluntary manslaughter charge in all murder cases being tried on or after May 2, 1974. However, the above-described practice would still obtain in all cases not within the purview of the new rule.
 
 
 [7]
 'By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court.' United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973). Fundamental to the judicial system is the principle that it is the court, and not the jury, which defines the legal elements of the offense and limits the alternatives open to the jury in returning a verdict. As Justice Cohen stated in his dissent in Commonwealth v. Pavillard, supra, 220 A.2d at 811:
 How is a jury able to exercise its power (to return a verdict of guilty of manslaughter) when it is never advised that it has such power?
 
 
 [8]
 In Commonwealth v. Davis, supra, 297 A.2d at 819, Justice Pomeroy again argued:
 Because the choice whether or not to charge is discretionary with the trial judge, and he has been furnished with no objective standards for his guidance, the challenged practice offends due process . . ..
 
 
 [9]
 The opinion in support of affirmance in Commonwealth v. Jones, supra, 319 A.2d at 149, answered the due process contention thusly:
 The opinion in support of reversal predicates its constitutional objections on the assumption that under the rule existing at the time of this trial 'the choice whether or not to charge (on voluntary manslaughter) is discretionary with the trial judge, and he has been furnished with no objective standards for his guidance.' We cannot not accept the assumption upon which these arguments are premised. The rule in question was based upon a theory of lesser included offenses. For this purpose, manslaughter was defined in the traditional sense. Thus, it was reasoned that the right to the charge existed only where evidence of provocation and passion could be found. Necessarily, where there was an absence of provocation and passion there was no right to such a charge. Cf., Keeble v. United States, 412 U.S. 205 (93 S.Ct. 1993, 36 L.Ed.2d 844) (1973).
 This statement, however, defines the defendant's right to a charge on voluntary manslaughter, while still leaving to the trial judge the ultimate decision on whether such a charge should be given. See infra, pp. 343-344.
 Likewise, in Commonwealth v. Davis, supra, 297 A.2d at 821, Justice O'Brien speaking for himself, Chief Justice Jones and Justice Eagen, reasoned that under Pennsylvania law 'a defendant is entitled to a charge on the law of manslaughter only when there is some evidence to support such a verdict.' He did not meet the constitutional issues raised but concluded that the facts of that felony-murder case rendered 'any evidence of passion or provocation . . . irrelevant.' Id., at 822.
 In Commonwealth v. Cannon, 453 Pa. 389, 309 A.2d 384 (1973), the defendant argued that there was evidence to support a verdict of manslaughter and therefore he was entitled to an instruction thereon. A majority of the court held that there was no evidence of passion or provocation and the refusal to instruct was not error; no constitutional issues were discussed. Justices Roberts, Pomeroy and Manderino dissented for the reasons expressed by Justices Roberts and Pomeroy in Matthews and Davis.
 
 
 [10]
 One found fuilty of a lesser offense is impliedly acquitted of the greater offense, thereby prohibiting retrial on the higher charge. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)
 
 
 [11]
 Section 1035 of the Revised Statutes and its successor provision F.R.Crim.Pro. 31(c), the federal 'lesser offense' statutes
 
 
 [12]
 The Commonwealth cited various state court decisions from other jurisdictions. These cases also do not address themselves to the Pennsylvania practice
 
 
 [13]
 Commonwealth brief at 13
 
 
 [14]
 Commonwealth v. Jones, supra
 
 
 [15]
 'The jury had the power, even though the evidence established murder, to find a voluntary manslaughter verdict.' Commonwealth v. Kellyon, supra, 122 A. at 167
 
 
 [16]
 See footnote 3, supra. In Commonwealth v. Robinson, 305 Pa. 302, 157 A. 689, 692 (1931), the court approved the following instruction given by the trial judge in a murder case:
 While we have defined to you the crime of voluntary manslaughter, we say to you, members of the jury, as we view the case, there is no evidence in it that would warrant a verdict of voluntary manslaughter, althouth, in the absence of evidence, it is within your power to render such a verdict, because, in the crime of murder, the jury always has the right to fix the degree of the homicide.
 
 
 [17]
 See cases cited in Commonwealth v. Jones, supra, Nix, J. at 319 A.2d 146 n. 1. We note that the opinions in support of affirmance in neither Commonwealth v. Jones, supra, nor Commonwealth v. Davis, supra, quoted any Pennsylvania cases with language to this effect
 
 
 [18]
 While the substantive ruling in Palko was overruled in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the essence of these remarks still obtains. Cf., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)
 
 
 [19]
 Appellee was convicted in 1968, four years before the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)
 
 
 [20]
 This opinion was authored by Justice O'Brien and he was joined by Chief Justice Jones and Justice Eagen. Although Chief Justice Jones took no part in the consideration or decision of Commonwealth v. Jones, supra, Justices O'Brien and Eagen were among the three justices opting for a supervisory rule
 
 
 [21]
 It appears that Pennsylvania law requires that a jury be told that they can return a verdict of second degree murder in all first degree murder cases. Commonwealth v. Gibbs, 366 Pa. 182, 76 A.2d 608 (1950); Commonwealth v. Davis, supra, 297 A.2d at 822 n. 1 (O'Brien, J., Opinion in Support of Affirmance)
 
 
 [22]
 Commonwealth v. Matthews, supra, 285 A.2d at 517 (Pomeroy, J., dissenting)
 22A Judge Kalodner in dissent argues that this is a felony/murder case and that 'existence of passion and provocation . . . is of no relevance,' citing Commonwealth v. Meleskie, 278 Pa. 383, 123 A. 310 (1924). However, we are concerned here not with the existence or relevance of such evidence but rather with the jury's ability to exercise its power to return a verdict of voluntary manslaughter, absent supportive evidence.
 This power of the jury has not been denied in felony/murder cases. See, Commonwealth v. Butcher, supra. Indeed, we note that neither opinion in Commonwealth v. Jones, supra, explicity exempts felony/murder cases from the requirement that a charge on voluntary manslaughter be given upon request.
 
 
 [23]
 See Roger Traynor's incisive discussion, 'Evaluating the Effect of Error: A Sliding Scale of Probabilities,' Traynor, The Riddle of Harmless Error (1970) 33-37
 
 
 [24]
 This case readily lends itself to the Linkletter analysis and it is therefore unnecessary to use the approach taken in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). There, the Court noted that the Linkletter test 'is simply not appropriate' in terms of nonprocedural guarantees. Id., at 508, 93 S.Ct. 876. Here we are dealing with a procedural rule
 
 
 [25]
 Where there is any evidence of passion or provocation in a murder case, a defendant is entitled to a charge on voluntary manslaughter. Commonwealth v. Flax, 331 Pa. 145, 200 A. 632, 636 (1938); Commonwealth v. Dews, 429 Pa. 555, 239 A.2d 382, 385 (1968)
 
 
 [1]
 Commonwealth v. Jones, Pa., 319 A.2d 142 (1974)
 
 
 [2]
 Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)
 
 
 [3]
 It would appear that Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), provides an apt description of the due process guideline to be applied in this case
 
 
 [4]
 Majority Opinion at 341
 
 
 [5]
 In this connection the dissent refers to Commonwealth v. Meleski, 278 Pa. 383, 123 A. 310 (1924), and Commonwealth v. Davis, 449 Pa. 468, 297 A.2d 817 (1972), cert. denied 414 U.S. 836, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973). However, in Davis, only a plurality of three justices stated that in a felony murder prosecution it is 'perfectly proper for a trial judge to eliminate completely the jury's consideration of a voluntary manslaughter verdict.' Id. at 821
 
 
 [6]
 While logic perhaps supports the elimination of 'passion or provocation' in the felony murder situation, this view might nonetheless reflect an overly narrow concept of the jury's role. The jury historically functioned not only as fact finder but as a tempering element in criminal prosecutions. As Mr. Justice Nix observed in his Opinion in Support of Affirmance in Commonwealth v. Jones, Pa., 319 A.2d 142, 149 (1974), the capacity of the jury to find voluntary manslaughter even without evidentiary support derives particularly from its 'historically recognized mercy dispensing power.' Id. at 150. The absence of a logical basis for a voluntary manslaughter charge is thus not conclusive of the issue
 
 
 [7]
 See, e.g., Commonwealth v. Cannon, 453 Pa. 389, 309 A.2d 384 (1973); Commonwealth v. Butcher, supra; Commonwealth v. Dennis, 433 Pa. 525, 252 A.2d 671 (1969)
 
 
 [8]
 Were there an indication that trial judges in Pennsylvania never gave the voluntary manslaughter charge in the absence of evidence of passion or provocation, there would be serious reservations, at least in my mind, whether the absence of a clearly articulable standard constituted a due process violation. Too, since Matthews was convicted for felony murder, there would be no due process violation in this case if there were standards governing the giving of a manslaughter instruction in felony murder cases, even if there were no standard for general murder cases. Thus, until the Jones case, in 1974, there were no such standards in either type of case
 
 
 [9]
 Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States ex rel. Macon v. Yeager, 476 F.2d 613 (3d Cir. 1973)
 
 
 [1]
 Commonwealth v. Gibbs, 366 Pa. 182, 76 A.2d 608 (1950)
 
 
 [2]
 Sparf was cited and applied in United States v. Dougherty, 154 U.S.App.D.C. 76, 473 F.2d 1113, 1133 (1972); United States v. Dellinger, 472 F.2d 340, 408 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); United States v. Simpson, 460 F.2d 515, 518-520 (9th Cir. 1972); and United States v. Comer, 137 U.S.App.D.C. 214, 421 F.2d 1149, 1153 (1970)
 The rationale of the Sparf doctrine that instructions should not be given when they are without evidentiary basis was epitomized in United States v. Dougherty, supra, as follows at page 1133:
 'The jury's role was respected as significant and wholesome, but it was not to be given instructions that articulated a right to do whatever it willed.'
 
 
 [3]
 Commonwealth v. Cannon, 453 Pa. 389, 309 A.2d 384 (1973) (refusal to charge); Commonwealth v. Dews, 429 Pa. 555, 239 A.2d 382 (1968) (failure to charge); Commonwealth v. Pavillard, 421 Pa. 571, 220 A.2d 807 (1966) (failure to charge); Commonwealth v. LaRue, 381 Pa. 113, 112 A.2d 362 (1955) (failure to charge); Commonwealth v. Yeager, 329 Pa. 81, 196 A. 827 (1938) (refusal to charge); Commonwealth v. Spardute, 278 Pa. 37, 122 A. 161 (1923) (refusal to charge); Commonwealth v. Newson, 277 Pa. 48, 120 A. 707 (1923) (refusal to charge); Commonwealth v. Pava, 268 Pa. 520, 112 A. 103 (1920) (failure to charge); Commonwealth v. Sutton, 205 Pa. 605, 55 A. 781 (1903) (refusal to charge); Commonwealth v. Crossmire, 156 Pa. 304, 27 A. 40 (1893) (failure to charge); Brown v. Commonwealth, 76 Pa. 319 (1874) (failure to charge)
 
 
 [4]
 Sparf ruled with respect to the then extant Section 1035, R.S., predecessor of present Rule 31(c), Fed.R.Crim.P., that it 'did not authorize a jury in a criminal case to find the defendant guilty of a less offense than the one charged, unless the evidence justified them in so doing,' and that 'the only object of that section was to enable the jury, in case the defendant was not shown to be guilty of the particular crime charged, and if the evidence permitted them to do so, to find him guilty of a lesser offense necessarily included in the one charged, or of the offense of attempting to commit the one charged.' 156 U.S. at 63, 15 S.Ct. at 278
 Carmona similarly construed Rule 31(c) at 422 F.2d 100 in rejecting the defendant's contention with respect to the failure of the trial court to charge on voluntary manslaughter.
 Rule 31(c) provides:
 'Conviction of Less Offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.'
 
 
 [5]
 'It is elementary that instructions to the jury in relation to matters not put in issue by the proof adduced are unnecessary, and requests therefor are properly refused. Although instructions in a homicide case may state a correct principle of law, they ought not to be given if they are not based upon or conform with the issues raised or facts supported by the evidence. The court is not bound, and should not be bound, to instruct the jury respecting the abstract rules of the law for homicide, but only respecting the principles applicable to the evidence of killing in the case at bar, although the giving of an abstract instruction is a cause for reversal only when it is reasonably apparent that the jury has been misled.'
 
 
 [6]
 See, too, Commonwealth v. Dennis, 433 Pa. 525, 252 A.2d 671 (1969); Commonwealth v. Frazier, 420 Pa. 209, 216 A.2d 337 (1966); Commonwealth v. Nelson, 396 Pa. 359, 152 A.2d 913 (1959); Commonwealth v. Steele, 362 Pa. 427, 66 A.2d 825 (1949)
 
 
 [7]
 The Pennsylvania Act of June 24, 1939, P.L. 872, 701, as amended December 1, 1959, P.L. 1621, 1, 18 P.S. 4701, in effect at the time of Matthews' trial, provided in relevant part:
 'All murder which shall be perpetrated by means of poison . . . or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree.'
 
 
 [8]
 297 A.2d 817, 819
 
 
 [9]
 See appendix to this dissent
 
 
 [10]
 Commonwealth v. Walters, 431 Pa. 74, 82, 244 A.2d 757, 762 (1968), quoting from Commonwealth v. Paese, 220 Pa. 371, 373, 69 A. 891, 892 (1908)
 
 
 [11]
 See note 3
 
 
 [12]
 In United States v. Stromberg, 268 F.2d 256 (2d Cir.) cert. denied, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959), the Court said with reference to a charge in a criminal case 'overly favorable to the defendants':
 'The error, since in favor of the defendants, is of course not ground for reversal.' 268 F.2d at 266.
 In Ebeling v. United States, 248 F.2d 429 (8th Cir.), cert. denied sub nom. Emerling v. United States, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957), the court said with reference to a favorable instruction improperly accorded to the appellants:
 'Error favorable to an appellant does not constitute a basis for reversal in a criminal case.' 248 F.2d at 438.
 
 
 [13]
 Commonwealth v. Davis, 449 Pa. 468, 297 A.2d 817 (1972)