## Commonwealth v. Meleskie, Appellant.

*Criminal law—Murder—Killing in attempt at rape.*

1. The law will not permit the pleas of a provocation and hot blood to a man who, when attempting rape, flies into a frenzy and kills his victim, because she bit him in the face, after he had got her on the floor.

2. A man who kills a woman in an attempt to perpetrate rape, is guilty of murder of the first degree, without regard to the existence of an intent to kill.

*Criminal law—Dying declarations—Charge—General exceptions.*

3. Where the court in a murder trial charges "that dying declarations should be received and weighed with great caution, as they are necessarily wanting in the test of cross-examination, in that the jury are without opportunity of observing the temper and manner of the declarant," the prisoner, after conviction, cannot complain of the inadequacy of the charge, if he failed at the trial to request further instructions although given an opportunity so to do, and merely takes a general exception to the charge.

Argued October 1, 1923. Appeal, No. 90, Oct. T., 1923, by defendant, from judgment of O. & T. Cambria Co., Sept. T., 1922, No. 4, on verdict of guilty of murder of the first degree in case of Commonwealth v. John Meleskie. Before MOSCHZISKER, C. J., FRAZER, WALLING,

SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before EVANS, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were (1) in failing to charge the jury on the question of manslaughter; (2) in failing to charge the jury fully on the weight, effect and consideration to be given to dying declarations, and (3) in imposing judgment and sentence on defendant, without quoting the record.

*C. Randolph Myers,* with him *Thomas C. Evans,* for appellant.—Under all the evidence in the case the court erred in failing to charge the jury on the question of manslaughter: Com. v. Buccierrie, 153 Pa. 535; Com. v. Sutton, 205 Pa. 605; Com. v. Colandro, 231 Pa. 343; Com. v. Curcio, 216 Pa. 380; Com. v. Marcinko, 242 Pa. 388; Meyers v. Com., 83 Pa. 131.

The court erred in failing to charge fully on the effect to be given to dying declarations: Meyers v. Com., 83 Pa. 131; Com. v. Pacito, 229 Pa. 328; Com. v. Shults, 221 Pa. 466; Com. v. Caraffa, 222 Pa. 297.

*D. P. Weimer,* District Attorney, for appellee, cited: Com. v. Lessner, 274 Pa. 108; McMeen v. Com., 114 Pa. 300.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 7, 1924:

John Meleskie appeals from a sentence on conviction of first degree murder, contending that the trial judge committed material error in two respects: First, by instructing the jury there was no evidence of manslaughter

in the case; and, second, in failing to charge properly on the weight, effect and consideration to be given dying declarations.

According to the testimony for the prosecution, the firing of two shots, shortly followed by a third, on the morning of May 15, 1922, attracted several witnesses to the house where defendant lived with Annie Turczyns, the deceased, and her husband. The victim of the crime was found, severely wounded, lying in the yard of her home, and inside, on the floor of the hall leading from her bedroom, lay the defendant Meleskie, unconscious, with a bullet wound in the left temple, and his revolver (containing three discharged and two loaded cartridges) eight inches away from his hand.

The Commonwealth introduced dying declarations of the deceased,—made immediately after she was found and subsequently repeated in the presence of the physician who dressed her wounds, the chief of police and others,—to the effect that, on the morning of the crime, the victim's husband left to attend a miners' meeting at Nanty-Glo, and, shortly after his departure, defendant came into her room and made improper proposals, with which she refused to comply, whereupon he attempted to ravish her; when she tried to call assistance, he shot her twice and himself once; then she rushed downstairs and out into the yard, where she was later discovered.

Defendant testified that on the morning in question he was not feeling well, so did not accompany Mike Turczyns, deceased's husband, to Nanty-Glo, as he had expected to do; that, after Mike left, he, Meleskie, was in his own room drinking from a bottle of alcohol, when deceased entered; she also felt ill and he gave her some of the liquor; she left the room, and he took a few more swallows, when his mind became blank, and he recollected nothing more until he awoke in a hospital several days later. When called for sentence, however, defendant said the testimony he had previously given was untrue; that in reality he had gone into the room of

Annie Turczyns, and caught hold of her, when her husband returned and shot him, and at the trial he did not know she was dead, so lied to protect her.

On the question of manslaughter, defendant contends that whether or not the killing was done in the heat of passion, after sufficient provocation, was an issue for the jury, because a witness, in relating the dying declarations of deceased, said she had stated: "After he [the defendant] got her on the floor she bit him in the face; after he had her on the floor......she bit his finger, and *then he got mad* and......shot [her] two times and shot himself once." Appellant's argument is that being bitten was sufficient provocation to raise passion, and this, when coupled with the evidence that "he got mad," might conceivably reduce the crime to manslaughter. Such contention is devoid of merit. The testimony in question,—the only evidence in the case to which defendant points as suggesting the possibility of manslaughter,— relates to attempts on the part of deceased to protect herself against a criminal assault. Barbarous indeed would be a law permitting the plea of provocation and hot blood to a man who, when attempting rape, flies into a frenzy and kills his victim because she forcibly defends herself against his criminal purposes; but no such rule exists in our criminal jurisprudence. On the contrary, our legislature long ago regarded this crime as involving such depravity that, by section 74 of the Act of March 31, 1860, P. L. 402, it provided for the capital punishment of one causing death of another in an attempt to perpetrate rape, and that without regard to the existence of an intent to kill: Com. v. Lessner, 274 Pa. 108, 113.

When the evidence is considered in the light of the statute defining first degree murder, keeping in mind the express opportunities given the jurors either to acquit or bring in a verdict of second degree, it becomes clear the verdict rendered means, and can only mean, a finding that defendant killed deceased in an attempt to per-

petrate rape; such was the plain purport of her dying declarations, which were the only evidence produced at trial describing the circumstances attending the shooting. This grave offense would not be mitigated because, at the time of the killing, defendant's wrath was kindled by the forcible endeavors of his victim to protect herself, and, under the circumstances, the trial judge was justified in refusing to charge upon the law of manslaughter: Com. v. Spardute, 278 Pa. 37.

As to the alleged failure to instruct fully on the consideration to be given dying declarations, the court affirmed defendant's sixth request for charge, as follows: "Dying declarations should be received and weighed with great caution, as they are necessarily wanting in the test of credibility of cross-examination, in that the jury are without opportunity of observing the temper and manner of the declarant"; this leaves no room for complaint by one who, when expressly invited by the trial judge to call his attention to matters requiring additions or correction, failed to request further instructions on the subject now brought to our notice, and who took only a general exception to the charge: Com. v. Pava, 268 Pa. 520, 525.

The trial in the court below was fair, the charge, on the whole, both adequate and impartial, and the verdict fully justified by the evidence.

The assignments of error are overruled, the judgment is affirmed, and the record is remitted for the purpose of execution.