## Commonwealth *v.* Thomas, Appellant.

Argued March 24, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edward E. Petrillo,* for appellant.

*Damian J. McLaughlin,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 26, 1947:

This is an appeal of Mildred Thomas from a conviction of murder in the first degree, with life sentence imposed. Her brother, Mike Bubna, was at the same trial convicted of the same murder in the same degree, with the death penalty imposed. The defendants did not demand separate trials. The facts relating to the murder of Robert Fisher are set forth in the opinion this day filed in the case of *Commonwealth v. Bubna,* 357 Pa. 51, and it is not necessary to repeat them.

The proof that Mrs. Thomas was an accessory after the fact to Fisher's murder was overwhelming. One may be an accessory after the fact to a murder yet not be guilty as a principal. The circumstances that the murder of Fisher took place in her house and that she witnessed it did not in themselves make her guilty of the crime. See *Com. v. New,* 354 Pa. 188, at 198, 47 A. 2d 450.

Mrs. Thomas' actions in cutting the hair and eyebrows of Fisher before he was killed and her actions in resuming the cutting of his hair after he was killed and her actions in destroying his wallet and all papers found therein are, as testified to, set forth in the opinion this day filed in the case of *Commonwealth v. Bubna,* supra. The fact of her cutting Fisher's hair *before* the homicide would be as consistent with her claim that it was done as a joke as it would be with the Commonwealth's claim that its purpose was to make more difficult the identification of Fisher after he was done to death. But the fact that she *immediately after* the shooting of Fisher in the cellar *resumed* the cutting of his hair cancels her claim that the hair-cutting *before* the homicide was a "joke". When Fisher was murdered in her presence the joke phase of this case had ended. *At that time* there could have been no intention on her part to "make him the laughing stock of Erie" (as she testified she said when in the kitchen she cut his hair). The jury was justified in concluding that Mrs. Thomas' tonsorial treatment of Fisher was in its inception more homicidal than humorous.

The hair cutting and eyebrow shaving of Fisher were probably based on the assumption that Mike Dominic would do a much more thorough job than he did do in disposing of Fisher's body. It could not have been within the calculations of the conspirators that Dominic in executing the order to get rid of the body would merely place it on the ground in a not very secluded spot and cover it lightly with leaves and dirt. If Dominic had so disposed of the body as to delay its discovery there might have been such a change effected in Fisher's features that with his hair clipped and his eyebrows shaved he could not have been easily identified. Mrs. Thomas after Fisher's killing not only resumed the clipping of his hair but she also took his purse, removed papers from it, tore them up and threw them and the purse into the furnace. These papers probably contained

identifying data. She also cast into the furnace the scissors with which she cut Fisher's hair and flushed that hair down the toilet. She also took off Fisher's stockings and when Dominic asked her why she did these things she replied: "So you don't find any identifications." When Dominic returned to the house after disposing of Fisher's body, Mrs. Thomas told him to "change his clothes." He did so and she later told him that she had taken the changed clothes "down and burned them in the furnace". Fisher's collar was cut off by Bubna and also burned.

Ordinarily the close clipping of a man's hair does not radically alter his appearance for his hair is usually thin. But we have the testimony of the victim's wife that his hair was "long and wavy" and that when she saw him in the morgue "his hair was viciously cut off— it was just whacked off in hunks—it was very short." Cutting the *long and wavy* hair of a man substantially alters his appearance and Mrs. Thomas obviously knew this. When Fisher's body was discovered only two days after his death his features were not spoiled but the plot was.

Furthermore, the zeal which Mrs. Thomas exhibited in covering up the traces of this crime, such as her promptness in washing the mud and blood off the car, indicates that she had advance notice of the murder scheme and approved of it. There is no allegation that she acted under duress. The evidence warrants the conclusion that Mrs. Thomas and her brother had planned the murder of Fisher when they knew he was coming to the former's home to air his grievances and to answer charges of "double-crossing" in the car stealing racket. The first act in the perpetration of this crime was stupifying Fisher with liquor. The second act was the alteration of his appearance.

When *after* the killing of Fisher, Mrs. Thomas *resumed* the cutting of his hair and burned the papers in his wallet, her purpose was no longer in doubt. These and

other *post*-murder acts directed towards the concealment of Fisher's murder made her an accessory *after the fact,* *but* her clipping of Fisher's "long, wavy" hair and her shaving of his eyebrows *before* the murder so fitted into her subsequent criminal conduct as to reveal that the purpose of *both* the "before" and the "after" hair clipping was the same. The hair cutting and eyebrow shaving before the murder, with *this* purpose, made her a party to this murder plan. We said in *Commonwealth v. Strantz,* 328 Pa. 33, 195 A. 75: "One is an aider and abbettor in the commission of any crime, i. e., he has 'joined in its commission,' if he was an active partner in the intent which was the crime's basic element . . . 'The least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all.' . . . when two or more persons conspire or combine with one another to commit any unlawful act, each is criminally responsible for the acts of his associate or confederate committed in furtherance of the common design. In the contemplation of law the act of one is the act of all." [1]

Another item of evidence which supports the verdict is the fact that when Mike Bubna ordered Eleanor Tarbell out of the kitchen and said: "She isn't used to anything like this and it is going to be messy"; and "there's things going on around here I wouldn't want you [Eleanor Tarbell] implicated", Mrs. Thomas did *not* inquire as to the warning's import. The legitimate inference is that she had already been apprised of the "messy", i. e., bloody, work which was afoot and that her brother's "blue print" for Fisher's murder had her approval. In that "blue print" the part assigned to her

---

[1] The Act of June 24, 1939, P. L. 872, as amended, 18 PS 5105, provides, inter alia, as follows: "Every principal in the second degree or accessory before the fact, to any felony at the common law or under any Act of Assembly may be indicted, tried, convicted, and if no punishment is provided, may be punished in all respects as if he were the principal felon."

was to proceed without delay to make the victim's identification doubtful and both *before and after* the murder she showed promptness and zeal in carrying out her assignment. She even went in the cellar to witness her brother's performance of his "messy" job, and so that no time should be wasted between Fisher's "taking off" and the destruction of identification indicia, she resumed her work without further orders from the director. She needed none for she had already performed a preliminary part of the felonious work before its consummation.

Her "before the fact" activities in attempting to make difficult the identification later of the man marked for slaughter so dove-tailed with her "after the fact" activities directed to the same end as to constitute them a perfect unit in her and her brother's plan of murder—a plan conceived in greed and executed with brutality and dispatch.

In her own defense Mrs. Thomas testified that when Fisher left her home at about 8 P. M. on March 4th, after a "friendly conversation" with her brother, Bubna went to bed and later got up when Dominic returned. Bubna then laid on the davenport. She denied (1) asking Eleanor for any shears, (2) cutting Fisher's hair and eyebrows, (3) going into the cellar, (4) taking Fisher's wallet or (5) removing his stockings. She said she heard no shots and did not see Fisher's dead body. She denied advising Dominic later in the evening to "change his clothes" and stated that she burned no clothes of his.[2]

---

[2] On August 9, 1946, nearly three months after her trial and conviction, Mrs. Thomas made a lengthy statement in the Erie County jail in the presence of her attorneys, about Robert Fisher's murder. Her statement was taken down stenographically and transcribed and was submitted with the record in this case. In this statement she admitted that after 9 P. M. on March 4, 1946, she decided "it would be a good joke to cut off the front of Fisher's hair because a mop of it always hung down over his forehead . . . he was proud of his hair. . . . We [all] got a big kick out of it . . . Eleanor [Tarbell] . . . commenced to shave off Fisher's eyebrows . . ." Early in the morning of March 5th, after Bubna had seen his

There are six assignments of error in this case and all of these are dismissed as being without merit. The first one relates to the charge of the court as to the amount of credibility to be given the testimony of an accomplice. It is the same as the third assignment of error in the case of *Commonwealth v. Bubna,* supra, and what we said in dismissing the third assignment in that case applies to the first assignment in this case.

The second assignment of error is based on the alleged failure of the court to point out "the lack of either positive or circumstantial evidence convicting the defendant, Mildred Thomas, with the murder of Robert Fisher and in charging the jury as follows concerning circumstantial evidence" (quoting a 90 word excerpt). It would have been advisable for the court to have explained more fully the nature of circumstantial evidence, but on this phase of the case there was no such inadequacy of instruction as to amount to reversible error. Counsel for the defendant did not ask for more adequate instruc-

---

car where it was stuck in the mud, he told her "he was afraid something had happened to Bob Fisher, . . . as there was blood on the hunning board of the car". Later Dominic returned with the car and "told him [Bubna] that he and Bob Fisher had a fight and he had killed Fisher".

On August 16, 1946, Mrs. Thomas made a statement in the Erie County jail in the presence of the district attorney. It was taken down stenographically, transcribed and submitted with the record in this case. In this statement she admitted that her brother, Mike Bubna, had an argument with Fisher in her house on the evening of March 4, 1946, about "double-crossing" on stolen car deals. When Fisher was on the floor "unconscious" (apparently from blows and liquor). Mike Bubna told her "he had to have Fisher taken care of or else he was going to squeal on him" [Bubna]. Bubna and Dominic then carried Fisher to the car. About 1 A. M. Dominic returned and reported that he had killed Fisher in the car with a rock and with the revolver. Bubna then told her he "had to have money to pay off Dominic for killing Fisher". She gave him money the next day "to pay off Dominic" and he gave Dominic "one or two hundred dollars". She helped Dominic clean the blood off the car.

The affirmation of the judgment of the court below in this case is *not* based to any extent on these statements made *after the trial.*

tion on this point and took no specific exception to the charge. See *Com. v. Meleskie,* 278 Pa. 383.

The third assignment of error is based on the alleged failure of the court "to explain more thoroughly . . . that the mere presence at a homicide does not make a person guilty of joining in such criminal act . . ." We find no substantial inadequacy in the court's instruction on this point. Counsel made no complaint about it at the conclusion of the charge.

The fourth assignment of error is based on the court's refusal of the defendant's seventh point of instructions to the jury. The point was not correctly drawn and its substance was properly and adequately covered in the charge.

The fifth assignment of error was based on the court's refusal of binding instructions for the acquittal of Mildred Thomas, and the sixth assignment of error was based on the court's refusal of a new trial.

The judgment is affirmed. The record is remitted to the court below so that the sentence imposed may be carried out.