Commonwealth *v.* Rife, Appellant.
Commonwealth *v.* Hughes, Appellant.

Argued May 1, 1973.  Before Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Gerald Alch,* with him *John A. Daly, John R. Truman,* and *Ronald J. Hagarman,* for appellants.

*Oscar F. Spicer,* for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, November 26, 1973:

On March 26, 1971 appellants, Hillen G. Rife and Larry Hughes, and four codefendants below were engaged in a fight in Abbottstown, Adams County, Pennsylvania with Paul Shoemaker and Austin Shoemaker, two brothers, and one Laverne Legore. The Shoemakers sustained injuries in the affray, and Legore was killed by a severe blow to the chest. Following a trial without jury, appellants were found guilty of voluntary manslaughter with respect to Legore and of aggravated assault and battery with respect to Paul and Austin Shoemaker. Each was sentenced to concurrent terms of 1 1/2 to 7 years on the manslaughter charge and 6 to 12 months on the assault and battery charge. These appeals followed.[1]

---

[1] Appellants and four co-defendants were tried together on a variety of charges arising from the incident. Only appellants were convicted of homicide charges; hence they alone have a right of direct appeal to this Court under the Act of July 31, 1970, P. L. 673, No. 223, art. II, §202, 17 P.S. §211.202. The appeals from the convictions of aggravated assault and battery should have been taken to the Superior Court but were erroneously filed in this Court. The Commonwealth has interposed no objection, however, and the failure to object serves to perfect this Court's jurisdiction of the appeals unless the Court orders otherwise. (Act of July 31, 1970, P. L. 673, No. 223, art. V, §503, 17 P.S. §211.503). While ordinarily we would transfer an assault and battery appeal to the

## I.

Appellants first contend that the Commonwealth's evidence was insufficient to establish their guilt of manslaughter beyond a reasonable doubt. As we said in *Commonwealth v. Cimaszewski*, 447 Pa. 141, 143, 288 A. 2d 805 (1972) : "It is axiomatic that where the prosecution has won the verdict at trial, appellate courts are bound to review the evidence in the light most favorable to the Commonwealth together with all reasonable inferences flowing therefrom. Commonwealth v. Miller, 445 Pa. 282, 284 A. 2d 739 (1971) ; Commonwealth v. Ewing, 439 Pa. 88, 264 A. 2d 661 (1970)."

The evidence in the instant case, considered in light of the above standard, was sufficient for the court to have found the following facts.[2] Following a disturbance in the Hofbrauhaus, a bar in Abbottstown, the defendants left at closing time and the Shoemakers and Legore followed. In the street in front of the bar a commotion took place among members of the Shoemaker group and the defendants in which some shoving and threats were exchanged, the defendants participating in varying degrees. The defendants then went to their automobiles and began to drive away. As the cars

Superior Court, we have chosen not to do so here because the claim that the manslaughter verdicts are inconsistent with the verdicts rendered in the aggravated assault and battery cases (see part III, *infra*) makes it appropriate for all the judgments to be reviewed by the same court.

[2] The case took three days to try. Some 35 witnesses were called by the Commonwealth, and almost as many by the defendants. Some 50 exhibits were introduced into evidence. The testimony depicted a confusing and fast-moving street fight, and was itself understandably somewhat confusing and conflicting. The opinion of the learned trial judge accompanying his denial of motions in arrest of judgment and for a new trial succinctly summarizes the evidence bearing on each of the indictments as applied to each of the defendants. The recital in this opinion is necessarily much abbreviated.

passed the Hofbrauhaus entrance, the Shoemaker brothers kicked at them. Further up the street the defendants stopped their cars and alighted, pursued by the Shoemakers. Shots were fired at the Shoemakers as they approached. A fight then occurred in which all six defendants participated, the two appellants playing principal roles. The Shoemaker brothers were knocked down, whereupon Legore entered the affray with a weapon, a mason's long level, with which he struck Larry Hughes. In the fighting both Shoemakers were felled to the ground, Paul being rendered unconscious; Legore was killed by a blow to the chest from the level. According to their own testimony, both appellants engaged in the struggle with Legore. Appellant Hughes had called to appellant Rife for help when struck by Legore with the level. Rife came to Hughes' aid and together they fought with Legore. Despite their denials that either one struck the deceased with the level, there was ample testimony from which the trial court could infer that one or the other of the appellants had struck the fatal blow.

There was sufficient evidence of shared criminal intent and activity to find that appellants were accomplices, and they may, therefore, be held responsible for one another's acts and those of their codefendants. *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782 (1964); *Commonwealth v. Lowry*, 374 Pa. 594, 600, 98 A. 2d 733, 736 (1953) cert. denied, 347 U.S. 914 (1954); *Commonwealth v. Thomas*, 357 Pa. 68, 72, 53 A. 2d 112, 114 (1947); *Commonwealth v. Strantz*, 328 Pa. 33, 40, 195 A. 75, 79 (1937); Cf. *Commonwealth v. Wilson*, 449 Pa. 235 (1972). As we said in *Commonwealth v. Strantz, supra*; "If one aids and abets in the commission of a crime, he is guilty as a principal. One is an aider and abettor in the commission of any crime, i.e. he has 'joined in its commission', if he was an active partner in the intent which was the crime's basic

element. . . . 'The least degree of concert or collusion between the parties to an illegal transaction makes the act of one the act of all.' No principle of law is more firmly established than that when two or more persons conspire or combine with one another to commit an unlawful act, each is criminally responsible for the acts of his associate or confederate committed in furtherance of the common design." The evidence was clearly sufficient to support the verdicts of guilty of voluntary manslaughter.

## II.

Turning to the aggravated assualt and battery charge, the elements of the offense as set forth in the Penal Code[3] are as follows: "Whoever unlawfully and maliciously inflicts upon another person, either with or without a weapon or instrument, any grievous bodily harm, or unlawfully cuts, stabs or wounds any other person, is guilty of [aggravated assault and battery]." The evidence showed that Paul Shoemaker suffered a skull fracture and concussion resulting in loss of memory as a result of blows inflicted by appellant Rife. There is no doubt that this injury was, as the trial judge found, "grievous bodily harm". Austin Shoemaker's injuries were less serious. A police officer who arrived on the scene after the defendants had departed testified that "[Austin] had cuts that were open on the bridge of his nose, he had a blackened eye, . . . and he had abrasions . . . along the side of his head. . . . His elbow, right at the joint, it had the skin scraped off but it was not bleeding." Austin Shoemaker himself testified: "I was bruised and I had a blackened eye

---

[3] Act of June 24, 1939, P. L. 872, §709, 18 P.S. §4709. The Penal Code was in effect at the time of the occurrences herein. It has been supplanted by the Act of December 6, 1972, P. L. 1482, No. 334, §1, 18 C.P.S.A. §2702.

and I had a large abrasion on the left of my head on one side." These resulted, apparently, from Austin's being knocked down by a car, followed by a kicking of his head by one of the defendants before he could get up, and by being hit on the legs by Hughes, who came after him with the mason's level. While it is arguable that Austin's injuries do not rise to the category of "grievous" bodily harm, the evidence is sufficient to support the finding of the trial court that he was wounded with a weapon of some sort, whether the automobile, the level, or defendant Poist's boot. We conclude that as to both appellants the court was fully justified in finding that both Paul and Austin Shoemaker were the victims of an aggravated assault and battery within the meaning of the Penal Code. See *Commonwealth v. Holgate*, 75 Pa. Super. Ct. 471, 476-77 (1921); *Commonwealth v. Houck*, 43 D. & C. 687, 702 (Q.S. Clinton Co. 1942).

### III.

We turn to appellants' other contention, viz., that the judgments must be reversed because inconsistent. The voluntary manslaughter indictments charged that appellants did "unlawfully, intentionally and feloniously, but *without malice*, kill and slay one Laverne Alton Legore. . . ." (Emphasis added.) The indictments for aggravated assault and battery charged that appellants did "unlawfully, willfully and *maliciously* make an aggravated assault and battery upon . . . Austin C. Shoemaker and Paul Shoemaker. . . ." (Emphasis added.) The appellants were found guilty on both charges.

Appellants argue that because "what small evidence there is shows distinctly that appellants Rife and Hughes were catapulted into the fight against all three assailants equally" and because "aggravated assault

. . . demands the essential ingredient of *malice,* whereas voluntary manslaughter expressly *denies* the presence of malice," the verdicts are inconsistent. We find no merit in this argument.

The evidence simply does not require the finding of equal malice as to all three assailants for which appellants argue. Only the Shoemakers were involved in the disturbance with the defendants inside the bar and the shoving, threatening and kicking of cars outside. Moreover the defendants saw the Shoemakers running up the street toward them and fired at them. Legore, on the other hand, surprised appellants, entering the fight at a later stage and with a weapon. Clearly the trial judge could have found from the evidence that appellants acted maliciously with respect to the Shoemakers, but in the heat of passion with respect to Legore.

More importantly, appellants' argument is based upon a misconstruction of the term "malice". Malice in the legal sense is not merely a description of an actor's state of mind. For example, had appellants, with the same state of mind as they had in the instant case, struggled with Legore and struck him with the level, thereby inflicting grievous bodily harm but not killing him, we have little doubt that appellants would properly have been held guilty of aggravated assault and battery upon Legore. Similarly, one who, believing unreasonably that his life is threatened by two others, fires a single shotgun blast at the two, killing one and wounding the other, may be convicted of voluntary manslaughter as to the deceased victim and aggravated assault and battery as to the one wounded. To say in such cases that one crime is committed with malice and the other without refers not to a difference in the defendant's state of mind, but to the existence of mitigating circumstances which the law recognizes in homicide cases as sufficient to reduce the offense from

murder to voluntary manslaughter, *Commonwealth v. Jennings*, 442 Pa. 18, 274 A. 2d 767 (1971); *Commonwealth v. Jordan*, 407 Pa. 575, 181 A. 2d 310; *Commonwealth v. Walters*, 431 Pa. 74, 244 A. 2d 757, but which in the case of lesser offenses are not relevant to the question of guilt. *Smith v. Lauritzen*, 356 F. 2d 171 (3 Cir. 1966); *Commonwealth v. Mitchell*, 181 Pa. Super. Ct. 225, 124 A. 2d 407 (1956).

As one text writer has stated it: ". . . malice in the legal sense imports (1) *the absence of all elements of* justification, excuse or *recognized mitigation,* and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and willful doing of an act with knowledge of circumstances indicating awareness of a plain and strong likelihood that such harm may result."[4] In these terms, a verdict of guilty of voluntary manslaughter, a killing "without malice", merely indicates a finding of "recognized mitigation"—in this case, that appellants acted in the heat of passion (including, of course, adequate provocation and absence of time within which reason should resume sway). Such a state of mind is not, however "recognized mitigation" as to the crime of aggravated assault and battery. Since the element of actual intent or reckless and wanton conduct was present, appellants could be said to have acted "maliciously" as to that crime. There is, thus, no inconsistency in the verdicts, but merely a difference as to what constitutes "recognized mitigation" of different offenses.

The judgments of sentence are affirmed.

Mr. Justice ROBERTS concurs in the result.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

[4] R. Perkins, *Criminal Law* (1957), p. 679 [Emphasis added].