J-A10031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY DESHAN DAVIS, | : | |
| | : | |
| Appellant | : | No. 1572 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 3, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004661-2017

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                **FILED: MARCH 22, 2021**

Appellant, Timothy Deshan Davis, appeals from the judgment of sentence entered on May 3, 2019, in the Court of Common Pleas of Bucks County.  We affirm the judgment of sentence but vacate the order denying Appellant's post-sentence motion that challenged the constitutionality of the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.42, and remand for further proceedings on these challenges.

The trial court summarized the factual and procedural history of this case as follows:

I.  FACTUAL BACKGROUND

At trial, E.C. testified that she rented a room at the Best Western Hotel in Bensalem, Pennsylvania so that she and her four children could enjoy a short getaway on the weekend of June 3,

_____

[*] Retired Senior Judge assigned to the Superior Court.

2017. N.T. 1/5/18, p. 93. That Saturday, Appellant, who had an on-again, off-again relationship with E.C., visited E.C. and her children at the hotel, but left after he and E.C. got into an argument. N.T. 1/5/18, pp. 95-97, 145. On Sunday afternoon, E.C. dropped her children off at her home in Philadelphia before meeting Appellant at his apartment in Bensalem "to talk about stuff that [had] been going on." N.T. 1/5/18, pp. 98-100. Appellant had been drinking by the time E.C. arrived at his apartment on Sunday evening. N.T. 1/5/18, p. 100. Shortly after meeting at the apartment, E.C. and Appellant drove back to the Best Western, where Appellant rented a room for an additional night. N.T. 1/5/18, pp. 98-101. E.C. and Appellant decided to travel together from the hotel to Appellant's friend's house in Camden, New Jersey to watch a basketball game. N.T. 1/5/18, p. 102. While at Appellant's friend's house, E.C. and Appellant drank SVEDKA Vodka and ate marijuana cookies. N.T. 1/5/18, pp. 103-105. After the game ended, Appellant invited his friend, his friend's girlfriend, and two other people to return to the Best Western with him and E.C. N.T. 1/5/18, pp. 106-107.

When they arrived back at the hotel, E.C. and the others changed into their bathing suits so that they could swim in the indoor pool. N.T. 1/5/18, pp. 109-110. E.C. and the other two women talked poolside while the men spent time in the Jacuzzi. N.T. 1/5/18, p. 111. As she was chatting with the women, E.C. noticed one of Appellant's friends fall asleep in the Jacuzzi. N.T. 1/5/18, p. 112. E.C. and Appellant began to argue when E.C. voiced her concern for the friend who was "knocked out" in the hot tub. N.T. 1/5/18, pp. 113-114. According to E.C., Appellant whispered something in his friend's girlfriend's ear while E.C. was talking to her. N.T. 1/5/18, pp. 115-116. E.C. felt "disrespected" and "swatted" Appellant on his head. N.T. 1/5/18, p. 116. Appellant then "got up and he started getting all crazy and he came and grabbed [E.C.] ... by [her] chest area...and slammed [her] down to the chair where [she] hit the back of [her] neck." N.T. 1/5/18, p. 117. E.C. got up and grabbed a beer bottle to strike Appellant, but Appellant grabbed the glass bottle out of her hand, dropped it, and "grabbed [E.C.] so hard and just slammed [her] down and banged [her] head." N.T. 1/5/18, pp. 119-120. E.C. testified that she hit her head on the floor three times, "everything faded away," and when she woke up, she was in the hotel room. N.T. 1/5/18, pp. 120-121. The surveillance video from the Best Western shows Appellant carrying E.C. over his shoulder to his hotel room. N.T. 1/8/18, pp. 19-25.

- 2 -

When E.C. woke up in the hotel room, she was laying on her stomach and Appellant was on top of her with his hands around her neck and shoulders. N.T. 1/5/18, pp. 123, 126. Appellant had pushed E.C.'s bathing suit to the side and according to E.C., Appellant "had his penis inside [her] butt, and it was hurting really, really bad. And [E.C.] kept telling him to stop." N.T. 1/5/18, pp. 123, 127. E.C. testified, "[Appellant] kept saying, 'this is what happens when you don't shut the fuck up and this is what happens, that's what you get. No, this is my asshole.' Like he kept saying stuff, and I'm like, 'Tim, please, stop, stop,' and he kept on and kept on. And I just kept praying." N.T. 1/5/18, pp. 123-124. After Appellant stopped and rolled off E.C., she waited to hear him snoring. N.T. 1/5/18, pp. 128-130. E.C. then got out of bed and crawled on the floor until she was able to find her bag and the car keys. N.T. 1/5/18, pp. 128-130. The surveillance video from the Best Western shows E.C. leaving the hotel still dressed in her bathing suit. N.T. 1/8/19, p. 25. E.C. then drove to nearest medical office and ran inside to ask for help. N.T. 1/5/18, pp. 131-134. Someone at the medical office called the police, who transported [E.C.] to Aria Bucks Hospital for treatment. N.T. 1/5/18, pp. 132-138, 195. Rachel Smull, the Sexual Assault Nurse Examiner who treated E.C., observed "an abrasion and bruising on her forehead and multiple areas of bruising on her...upper arm." N.T. 1/5/18, p. 211. During the examination, E.C. also reported "neck pain, loss of consciousness, nausea, vomiting, lightheadedness, loss of memory, and a headache." N.T. 1/5/18, p. 210. Smull examined E.C.'s vaginal and rectal areas and observed red fluid around her rectum. N.T. 1/5/18, pp. 219-220. At trial, Smull testified that the injuries were consistent with E.C.'s description of the assault. N.T. 1/5/18, p. 224.

## II. PROCEDURAL HISTORY

A jury found Appellant guilty of Involuntary Deviate Sexual Intercourse by Forcible Compulsion,[1] Involuntary Deviate Sexual Intercourse by Threat of Forcible Compulsion,[2] Aggravated Assault,[3] Sexual Assault,[4] Aggravated Indecent Assault without Consent,[5] and Simple Assault[6] on January 9, 2018, after a three-day trial. This [c]ourt deferred sentencing for completion of a presentence investigation and directed that the Pennsylvania Sexual Offenders Assessment Board ("SOAB") perform an assessment of Appellant as required by the Sex Offender

Registration and Notification Act ("SORNA") to determine whether Appellant is a sexually violent predator ("SVP"). On May 4, 2018, we sentenced Appellant to five-and-a-half to fifteen years in a state correctional facility on the Aggravated Assault charge with no further penalty on the other charges. Appellant's SVP evaluation was outstanding at the time of sentencing, but Appellant chose to proceed without it. N.T. 5/4/18, pp. 7-8.

[1] 18 Pa.C.S.A. §3123(a)(1).
[2] 18 Pa.C.S.A. §3123(a)(2).
[3] 18 Pa.C.S.A. §2702(a)(1).
[4] 18 Pa.C.S.A. §3124.1.
[5] 18 Pa.C.S.A. §3125(a)(1).
[6] 18 Pa.C.S.A. §2701(a)(1).

Appellant filed a timely Motion to Modify and Reconsider Sentence on May 9, 2018, and the Commonwealth moved to schedule a hearing to determine Appellant's SVP status on May 21, 2018. The parties agreed that this Court should delay its decision of those motions because the judges of the Court of Common Pleas of Bucks County had scheduled a hearing on September 17, 2018, to determine the constitutionality of SORNA II, specifically the SVP classification procedure. Prior to that hearing, on August 31, 2018, Appellant filed a "Motion to Declare SORNA 42 Pa.C.S.A. [§§] 9799, *et seq.* Unconstitutional, Motion to Vacate/Bar SOAB Evaluation, Objection to Commonwealth's Petition for Sexually Violent Predator Hearing, Motion for Continuance/Abeyance/Evidentiary Hearing and/or Motion to Bar Imposition of an Illegal Sentence." On September 12, 2018, the Commonwealth filed a "Memorandum of Law in Opposition to Defendants' Motions to Quash Determinations of Sexually Violent Predator Status and/or to Declare Act 10, Subchapter H Unconstitutional" and Appellant filed a "Brief In Support of His Motion to Find the Sexual Violent Predator Classification Procedure and the Entirety of SORNA II Unconstitutional Pursuant to the Reasoning Set Forth in **Muniz**, and **Butler**, **Torsilieri**, *et al*.".

On September 17, 2018, the panel heard argument regarding the constitutionality of SORNA II. Following that hearing, the Commonwealth filed a Supplemental Memorandum of Law on September 27, 2018, and Appellant filed a Responsive Brief on October 4, 2018.

While the panel's decision was pending, Appellant filed a Petition for Relief Pursuant to the Post-Conviction Relief Act on November 26, 2018, requesting full reinstatement of his post-sentence rights under the Post-Conviction Relief Act because 150 days had lapsed since his sentencing. This [c]ourt granted the relief requested in Appellant's PCRA petition and Appellant refiled Post-Sentence Motions on December 6, 2018.

On December 17, 2018, the panel of judges issued a Memorandum Opinion, in which it concluded that SORNA II remains punitive and unconstitutional despite the Pennsylvania General Assembly's revisions of February 21, 2018. *See* Memorandum Decision, December 17, 2018 (attached hereto as Exhibit A). The Commonwealth filed a Motion for Reconsideration/Clarification of the Memorandum Opinion on December 20, 2018.

On January 2, 2019, this [c]ourt heard argument in Appellant's Post-Sentence Motions, but held the matter under advisement because the panel had decided to reconsider the Conclusion of its Memorandum Opinion.

The panel reconvened on February 13, 2019, and ordered the parties to submit briefs in support of their respective positions. On February 22, 2019, the Commonwealth filed a Memorandum of Law in Support of Its Motion for Reconsideration, and on February 25, 2019, Appellant filed a "Brief in Support of the Motion to Find the Sexual Violent Predator Classification Procedure and the Entirety of SORNA II Unconstitutional Pursuant to the Reasoning Set Forth in **Muniz**, **Butler**, and **Torsilieri**, *et al.*" On March 18, 2019, the panel vacated the Conclusion from its December 17, 2018, Memorandum Opinion and issued an Order directing that the judges presiding over criminal matters in Bucks County (1) will not designate convicted defendants as SVPs or hold SVP hearings and (2) will continue to apply the tier-based registration periods pursuant to 42 Pa.C.S.A. § 9799.14 and 42 Pa.C.S.A. § 9799.15. *See* Trial Court Order, March 18, 2019 ….

Appellant filed a Motion for Extension of Time for Post-Sentencing Relief on April 1, 2019, which this [c]ourt granted on April 5, 2019. On May 3, 2019, we resentenced Appellant to five-and-a-half to fifteen years in a state correctional facility and advised Appellant on the record of the requirement that he register as a Tier[-III] offender pursuant to the requirements of

SORNA and the panel's Order of March 18, 2019. Appellant filed a timely Notice of Appeal on May 31, 2019.

Trial Court Opinion, 7/5/19, at 1-6. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review, which we have reordered for purposes of disposition:

[1.] Whether the Lower Court erred in finding that there was sufficient evidence to establish involuntary deviate sexual intercourse, aggravated assault, aggravated indecent assault, sexual assault, and simple assault where the verdict rested on the lack of evidence, inconsistent evidence, and there was insufficient evidence of the *mens rea*, *actus reas*, and requisite injury?

[2.] Whether the Lower Court erred in finding that the weight of the evidence established involuntary deviate sexual intercourse, aggravated assault, aggravated indecent assault, sexual assault, and simple assault where the verdict rested on the lack of evidence, inconsistent evidence, and there was insufficient evidence of the *mens rea*, *actus reas*, and requisite injury?

[3.] Whether the Lower Court erred when it failed to find that ACT 29 and its registration requirements violated the United States Constitution and the enhanced protections under the Pennsylvania Constitution on its face and as applied?

[4.] Whether the Lower Court erred when it failed to find that ACT 29 and its registration requirements violated the United States and Pennsylvania Constitution Due Process prohibition against *ex post facto* laws?

[5.] Whether the Lower Court erred when it failed to find that ACT 29 and its registration requirements violated United States and Pennsylvania Constitutional Due Process protections because it deprives Appellant of the Right to Reputation under the Pennsylvania Constitution, it creates an irrebuttable presumption, treats all offenders universally as high-risk, violates individualized punishment, overly inclusive of offenders and charges, ignores reasonable alternative means exist to identify offender risk, denies any meaningful opportunity to be heard, exceeds the least

restrictive means requirement, and otherwise violates substantive Due Process protections?

[6.] Whether the Lower Court erred when it failed to find that ACT 29 and its registration requirements violate the United States and Pennsylvania Constitutions as it constitutes cruel and unusual punishment where registration is based upon empirically false myths, fails to deter first time offenders, fails to reduce recidivism, threatens public safety, forces registrants and their families to suffer, creates an impassable barrier to reintegration into law-abiding society, and fails to address each offender individually?

[7.] Whether the Lower Court erred when it failed to find that ACT 29 and its registration requirements violate the United States and Pennsylvania Constitutions' Separation of Powers Doctrine, as it gave judicial powers to the Legislature and Pennsylvania State Police?

[8.] Whether the Lower Court erred when it failed to find that ACT 29 and its registration requirements violated United States and Pennsylvania Constitutions' Due Process provisions as it increased the maximum sentence without proof beyond a reasonable doubt to a jury in violation of *Alleyne v. United States*, 570 U.S. 99 (2013), and that said provisions are not severable?

Appellant's Brief at 5-7 (renumbered).

Appellant first argues that there was insufficient evidence to support his convictions. Appellant's Brief at 108-116. Appellant asserts that his convictions suffer from "the same deficiency, inconsistency, and lack of evidence." *Id*. at 108. Appellant contends that the convictions rely upon "bold statements and assertions made by witnesses without corresponding evidence." *Id*. at 111. Appellant claims that the evidence, and his version of the facts, support his allegation that "this was a normal evening with friends, which when alcohol is involved sometimes gets out of hand, but that no crime occurred." *Id*. at 116.

Our standard of review is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

The trial court addressed the challenge to the sufficiency of the evidence

with the following discussion:

> A person commits Involuntary Deviate Sexual Intercourse when he or she, by physical compulsion or threats thereof, coerces the victim to engage in acts of anal and/or oral intercourse. *See Commonwealth v. Zingarelli*, 839 A.2d 1064, 1070 (Pa. Super. 2003) (citation omitted). *See also* 18 Pa.C.S.A. § 3123(a)(1, 2); 18 Pa.C.S.A. § 3101. The penetration requirement for involuntary deviate sexual intercourse is "penetration however slight." *Cornmonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003). Therefore, in order to sustain a conviction for involuntary deviate sexual intercourse, the Commonwealth must establish that Appellant engaged in acts of oral or anal intercourse, which involved penetration however slight. *Commonwealth v. Poindexter*, 646 A.2d 1211, 1215 (Pa. Super. 1994), *appeal denied*, 655 A.2d 512 (Pa. 1995). In Pennsylvania, a person is guilty of Aggravated Indecent Assault if they engage "in

- 8 -

penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures." *See* 18 Pa.C.S.A. § 3125(a)(1). Sexual Assault constitutes a lesser-included offense of Involuntary Deviate Sexual Intercourse, by either forcible compulsion or with an individual who is unconscious or unaware that sexual intercourse is occurring. *Commonwealth v. Buffington*, 828 A.2d 1024 (Pa. 2003). *See also* 18 Pa.C.S.A. § 3123(a)(1, 3); 18 Pa.C.S.A. § 3124.1.

Here, the victim's testimony revealed that Appellant continuously inserted his penis into her anus while she was unconscious. E.C. begged Appellant to stop when she woke up, but he refused. A Sexual Assault Nurse Examiner examined E.C. shortly after the incident and determined that the injuries, including the red fluid around her rectum, were consistent with E.C.'s description of the assault. The victim's testimony constitutes sufficient evidence to establish penetration however slight because she describes how Appellant's penis was in her rectal area, as well as Appellant's statements at the time of the assault. *See Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003) (evidence is sufficient to establish penetration however slight where the victim's testimony revealed that Appellant inserted his testicles into her mouth). Appellant argues that evidence of Appellant's and E.C.'s prior relationship and Appellant's good character "[negated] the elements and [impeached] the lone accuser's testimony." However, it was the exclusive function of the jury to assess the credibility of the witnesses and to determine the weight to be accorded their testimony. *Commonwealth v. Bridell*, 384 A.2d 942, 945 (Pa. Super. 1978). The jury chose to believe E.C. and not Appellant after a three-day trial in which Appellant testified and we found no basis to overturn the jury's decision as to the sex crimes charged in this case.

Similarly, the jury found the evidence presented at trial sufficient to convict Appellant of Aggravated Assault and Simple Assault. "A person is guilty of [A]ggravated [A]ssault if he ... attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted

loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. The conduct giving rise to an inference that the accused intended to cause serious bodily injury need not itself be life threatening. *Commonwealth v. Rodriquez*, 673 A.2d 962, 966 (Pa. Super. 1996). In Pennsylvania, a person is guilty of Simple Assault if he "attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another [.]" 18 Pa.C.S.A. § 2701(a)(1). The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

"A person acts intentionally with respect to a material element of an offense when...it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Commonwealth v. Matthews*, 870 A.2d 924, 929 (Pa. Super. 2005) (citations omitted). "[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Id*.

During the trial, the Commonwealth presented ample evidence of Appellant's conduct, his criminal intent, and E.C.'s injuries so as to support Appellant's convictions for Aggravated Assault and Simple Assault. The victim's testimony that Appellant threw her down with such force that she lost consciousness is sufficient to prove that Appellant intended to cause her serious bodily injury. *See Commonwealth v. Kinney*, 157 A.3d 968, 973 (Pa. Super. 2017), *appeal denied*, 170 A.3d 971 (Pa. 2017) (evidence was sufficient to prove that Appellant attempted to cause victim serious bodily injury by repeatedly kicking and punching him in the head until he lost consciousness). Furthermore, the abrasions and bruising on E.C.'s head and arm constituted sufficient evidence of serious bodily injury. *See Commonwealth v. Rife*, 312 A.2d 406 (Pa. 1973) (evidence that victim suffered bruises, black eye, and large abrasion on the head supported finding that victim was the victim of an aggravated assault). As such, the Commonwealth established each of the elements of Aggravated Assault and Simple Assault beyond a reasonable doubt and Appellant is not entitled to relief on his sufficiency claims.

Trial Court Opinion, 7/5/19, at 12-14.

We have thoroughly reviewed the certified record before us on appeal, and we agree with the trial court's determination that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that Appellant committed the various sexual crimes and the assault crimes. Immediately after physically beating the victim at the swimming pool, Appellant carried her to a hotel room and began sexually assaulting her while she was unconscious and continued after she regained consciousness. Accordingly, Appellant's claim challenging the sufficiency of the evidence to support the crimes lacks merit.[1]

Appellant next argues that the verdict was against the weight of the evidence. Appellant's Brief at 117-119. Appellant contends that "each and every charge suffers the same deficiency, inconsistency, and lack of evidence." *Id*. at 117. Appellant alleges that "the conviction of Appellant

_____

[1] Our review further reflects no merit to Appellant's claim that the testimony offered by the victim and additional Commonwealth evidence was so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture as contemplated in **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993). Specifically, our review of the record reflects that any inconsistencies with regard to the details of the physical assault at the indoor swimming pool and the sexual assault that occurred in the hotel room were minor. Indeed, the Commonwealth established the details of the physical assault through testimony from the victim and corroborating video surveillance footage. Likewise, the victim offered testimony about the sexual assault that the Commonwealth supported by police testimony and DNA evidence. This is in stark contrast with the circumstances in **Karkaria**, wherein the complainant's testimony and statements repeatedly contradicted each other from the time the investigation began through the trial, and led to a conclusion that the evidence was insufficient to convict the appellant. Hence, we conclude there is no merit to this portion of Appellant's argument.

shocks one's conscience and that the lower court abused its discretion as the overwhelming weight of the evidence contradicts the jury's finding in this case." *Id*. at 118. Appellant claims that he should be awarded a new trial. *Id*. at 119.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id*. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial

court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

**Widmer**, 560 A.2d at 322, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

**Clay**, 64 A.3d at 1054-1055 (emphasis in original). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 879-880 (Pa. 2008).

The trial court addressed Appellant's challenge to the weight of the evidence as follows:

> In arguing that his verdict is against the weight of the evidence, Appellant claims that, "the lack of requisite injury, requisite intent, and forcible compulsion established an extraordinarily weak inference of any and could not overcome evidence of the consensual relationship, good character, and exculpatory and circumstantial evidence negating the elements [of the crimes] and impeaching the lone accuser's testimony." However, we reiterate that it was within the exclusive province of the jury to assess the credibility of the witnesses and weigh the evidence accordingly. *See Commonwealth v. McCalman*, 795 A.2d 412, 415 (Pa. Super. 2002). Considering the demeanor and testimony of the witnesses, we did not find that the verdict in this case was shocking or contrary to the evidence. In other words, the jury's decision to convict Appellant of Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Involuntary Deviate Sexual Intercourse by Threat of Forcible Compulsion, Aggravated Assault, Sexual Assault, Aggravated Indecent Assault without Consent, and Simple Assault is supported by the record. Therefore, Appellant is not entitled to relief on his weight claim.

Trial Court Opinion, 7/5/19, at 15.

Based upon our complete review of the record, we are compelled to agree with the trial court's conclusion that the jury's verdict was consistent with the evidence presented. Here, the jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant. The jury weighed the evidence and concluded Appellant committed the crimes charged. We agree that these determinations are not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and reweigh the evidence presented at trial. Accordingly,

- 14 -

we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

We next turn to the remaining issues presented by Appellant. Herein, Appellant raises challenges to the constitutionality of the order requiring him to register under SORNA as a Tier-III offender.

*Commonwealth v. Mickley*, 240 A.3d 957 (Pa. Super. 2020), instructs that the proper remedy is to remand for an evidentiary hearing on Appellant's challenges to SORNA. In *Mickley*, this Court observed that the appellant's constitutional challenges to SORNA were identical to arguments raised in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020). The *Torsilieri* Court did not reach the merits of any of the constitutional claims at issue, determining instead that the factual record was not sufficiently developed in the trial court. The Court in *Torsilieri* concluded that a remand was appropriate "to allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." *Id*. at 587. Based on *Torsilieri*, *Mickley* held:

> Here, despite defense counsel's attempt, no evidence was presented at the hearing on Mickley's post-sentence motion. Thus, in accordance with *Torsilieri*, we vacate the order denying Mickley's post-sentence motion and remand for a hearing at which the parties can present evidence for and against the relevant legislation determinations discussed above.

*Mickley*, 240 A.3d at 963; *see also Commonwealth v. Asher*, ___ A.3d ___, 2020 PA Super 293 at *4 (Pa. Super. filed December 21, 2020) (citing

- 15 -

***Torsilieri*** and ***Mickley*** and concluding that where the defendant preserved his constitutional challenges to SORNA, but trial court denied relief without developing factual record, remand was proper for hearing at which parties could present evidence for and against relevant legislative determinations).

Upon review of the record, we conclude that the same remedy is appropriate here. As noted by the Commonwealth, the SORNA issues raised by Appellant are the same as those raised in ***Torsilieri***. Commonwealth's Brief at 22 n.8. At the *en banc* trial court hearing held September 17, 2018, Appellant's counsel noted that the record was not complete and sought to present into evidence various affidavits "relevant to the due process challenges." N.T., 9/17/18, at 5. Appellant's counsel indicated the desire to create a record similar to ***Torsilieri***. ***Id***. at 5-6. However, the Commonwealth was hesitant to stipulate to the admission of the evidence. After extensive discussion and a brief recess, the *en banc* trial court reached the following conclusion:

> We've decided [to] proceed with the remaining arguments but not proceed on the due process issue today, and we're ordering both sides to meet within ten days and to endeavor to see whether or not you can reach an agreement as to what the record will be, whether there will be a stipulation as to the admissibility of affidavits and curriculum vit`ae for experts for us to consider.
>
> The second thing we're asking you to meet and discuss is for what purpose are we to consider those expert reports. See if you can reach an agreement, and if you cannot, you'll let us know that as well and what your position is. And then we can decide how we proceed on the due process issue.

***Id***. at 32-33.

The record further reflects that the parties were not able to reach an agreement as requested. Moreover, the trial court failed to address the due process claims presented by Appellant in either its memorandum opinion entered on December 17, 2018, or in its subsequent order entered on March 18, 2019. Hence, the proper remedy under these circumstances is to remand for a hearing at which the parties can present evidence relating to Appellant's SORNA arguments.

Judgment of sentence affirmed. Order denying post-sentence motion vacated and case remanded for proceedings consistent with ***Torsilieri***. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/21